WILLIAMS v. CHURCH et al.

No. 33183.    Oct. 26, 1948.

*198 P. 2d 995.*

Wm. K. Powers, Harry L. Dyer, and John W. McCune, all of Tulsa, for plaintiff in error.

Steele, Daugherty & Downey, of Tulsa, for defendants in error.

WELCH, J.   This action was commenced by Alphonzo Williams against M. E. Church et ux., for cancellation of a deed.

In 1944 the defendant sold 30 acres of land to plaintiff for a consideration of $15,000. Plaintiff paid $5,000 in cash and executed a mortgage to defendant for the balance.

In March 1946, the plaintiff owed $7,000 on the purchase price and was a year behind in the payments provided by the mortgage. After some negotiations between the parties plaintiff executed the deed in question and a bill of sale to certain farm machinery for which he received $6,000 from the defendant.

Upon the issues presented by the pleadings and the evidence, the trial court entered a judgment in favor of the defendant, and plaintiff appeals.

Plaintiff asserts:

"The clear weight of the evidence being that the defendant mortgagee obtained the deed for a grossly inadequate consideration and by the use of undue influence by taking a grossly oppressive and unfair advantage of the necessity and distress of the mortgagor, the judgment of the trial court is erroneous."

The record reflects that the land in question is located near the city of Tulsa; that plaintiff had purchased an additional 25-acre tract near the 30-acre tract here involved, and was making payment on the purchase price of that tract; that defendant was handling the collections for the estate which had sold the 25-acre tract; that defendant was a frequent visitor to the premises and advised plaintiff from time to time on the use and management of the land. On March 1, 1946, plaintiff was behind in his payments on the purchase price of both tracts of land. On that day defendant called plaintiff by telephone and inquired if he could make the back payments on the 30-acre tract and told plaintiff if he could not that defendant would be glad to buy his equity. The following day, March 2nd, the parties met on the premises and reached an agreement whereby plaintiff was to execute a deed to defendant and a bill of sale to certain farm machinery and defendant would pay plaintiff the sum of $6,000. On the following Monday, March 4th, plaintiff signed the deed here involved and defendant paid plaintiff the agreed sum. During the negotiations on Saturday there was some discussion of the potentialities in a subdivision of the tract into small lots. The tenant on the premises told plaintiff and defendant that a school building was to be put on the tract. A few days after defendant obtained the deed on March 4th, the defendant made an offer to the city school board to sell 20 acres of the land for $35,000, which offer was rejected. The defendant testified that on March 4th, the market value of the 30-acre tract was no more than $6,000, and the amount of the mortgage indebtedness; that he expected by putting in three years of his time with the tract to make it worth from $36,000 to

$40,000. There was other testimony to the effect that the market value of the property was a sum more than double the amount credited and paid by the defendant to the plaintiff.

The tenant on the premises testified that the plaintiff, on March 1st, offered to sell the premises to him for a consideration approximately the same as that paid by the defendant on March 4th.

It is beyond question that a mortgagee may purchase from the mortgagor if the transaction is fair, honest, and without fraud or undue influence, and where no unconscionable advantage is taken by virtue of the relation existing between the mortgagor and mortgagee. See Stallings v. Little, 191 Okla. 399, 130 P. 2d 525. Attention is directed to various cases wherein are found expressions to the effect that a conveyance from mortgagor to mortgagee is one of suspicion, and that a court of equity will scrutinize such a transaction closely to discover whether or not it was voluntarily entered into on the part of the mortgagor and whether it is free from undue influence, oppression, unfairness or unconscionable advantage. Plaintiff requests a review of the evidence in the light of this salutary doctrine.

Attention is directed to the evidence in reference to the value of the property and the trial court's finding, "that there was inadequacy of consideration."

As a general rule inadequacy of consideration of itself is not sufficient ground for setting aside a deed. "However, if the inadequacy of consideration is so glaring as to stamp the transaction with fraud and to shock the common sense of honesty, a court of equity will intervene." 16 Am. Jr. Deeds, 33. The rule was stated in the syllabus in Morton v. Roberts, 88 Okla. 263, 213 P. 297, as follows:

"Ordinarily mere inadequacy of consideration is not sufficient ground, in itself, to justify a court in canceling a deed, yet when the inadequacy is so gross as to amount to fraud, or in the absence of other circumstances, to shock the conscience and furnish satisfactory and decisive evidence of fraud, it will be sufficient ground for canceling a conveyance."

Here, there is no inadequacy of consideration so gross and glaring as to in itself stamp the transaction with fraud. The consideration for the deed is but one of the elements to be considered with the other circumstances in the determination of the question of whether or not an unconscionable advantage was taken by the mortgagee. The smallness of the consideration may be looked to as evidencing fraud where other circumstances point to oppression, misrepresentation, undue influence or undue advantage, but alone is not sufficient ground for setting aside the deed.

At the date of the transaction the defendant had for several years past been engaged in the management of real estate, the plaintiff was operating a taxicab company. No doubt there was some disparity in the business acumen of the parties. However, both parties had opportunity to observe the general appreciation in real estate values since 1944, and both had notice of the possibility of the land being chosen as a site for a school building before their deal was closed. There was no concealment of a hidden value. No attempt was made to acquire the land for the debt alone under threat of foreclosure, and defendant paid plaintiff an amount approximating the amount plaintiff had paid defendant on the original purchase price.

Plaintiff had opportunity of further investigation of value from the time the suggestion of purchase was made by defendant on Friday to the consummation of the trade the following Monday. The suggestion that plaintiff may have been under the influence of the defendant is somewhat weakened by the testimony of the tenant that plaintiff offered his equity to him for $6,000 before defendant had made a definite of-

fer. The testimony of the tenant adds weight to the idea that plaintiff's agreement with defendant was voluntary. The fact that defendant may have envisioned, and may receive, a profit from the transaction does not in itself make the price paid appear unconscionable. The record reflects that at the time of the transaction plaintiff was receiving a rental of $125 per month from the premises and was engaged in other business. Although he may have been in dire financial circumstances and was in default on the mortgage, nevertheless opportunity was open to him to deal with other people on his equity in the premises. Defendant's offer of an amount above the mortgage indebtedness approximating the amount plaintiff had invested in the property may have been considered more worthwhile to plaintiff than a further speculation on prices that might be obtained from others. The fact that there may have been a substantial appreciation in value since plaintiff purchased the property or a sudden appreciation about the time of the sale or that plaintiff may have discovered that he might have received from others a much greater price for his equity, does not in itself brand the consideration so grossly inadequate as to create a strong presumption that fraud, undue influence or oppression was practiced by the defendant.

In Antle v. Hartman et al., 193 Okla. 524, 145 P. 2d 756, it was held:

"Undue influence to vitiate a conveyance must destroy the grantor's free agency at the time the conveyance is executed and must, in effect, substitute the will of another for that of the grantor.

"Mere suspicion, conjecture, possibility or guess that undue influence has been exercised is not sufficient to defeat a grant of conveyance otherwise valid."

We note the finding of the trial court as set out in the journal entry of judgment, "that neither of said defendants practiced any fraud or duress on plaintiff and no oppression existed. . . ."

The finding is sustained by the clear weight of the evidence.

This is a case of equitable cognizance. We have examined the entire record and weighed the evidence. The findings and judgment of the trial court do not appear contrary to or against the clear weight of the evidence.

The judgment is affirmed.

HURST, C. J., and RILEY, BAYLESS, CORN, GIBSON, and ARNOLD, JJ., concur.