## SMITH et ux. v. LINDLEY et al.

No. 33480. Jan. 24, 1950.

Rehearing Denied March 7, 1950.

*215 P. 2d 566.*

---

Young, Young & Young, of Sapulpa, for plaintiffs in error.

Tom Wallace, Everett S. Collins, Wallace & Collins, and E. C. McMichael, all of Sapulpa, for defendants in error.

O'NEAL, J. This is an appeal from a decree reforming a deed.

The action was commenced by Paul E. Smith and Louise E. Smith, husband and wife, herein referred to as plaintiffs, against Florence Lindley, Mary P. Lindley, Caroline Lindley, Melvin H. Pickering, and Mrs. Melvin H. Pickering.

In their petition plaintiffs allege their ownership of lot 11, block 1, Main Street addition to the city of Sapulpa under both a warranty deed and a quitclaim deed; and notwithstanding plaintiffs' ownership of said property and premises, defendants have wrongfully and illegally used and occupied the same from and after September 1, 1944, to plaintiffs' damage in the sum of $400, for which plaintiffs pray judgment.

The answer is a general denial, with the admission that the plaintiffs do have an interest in the premises described in plaintiffs' petition, which interest is limited to that set forth in defendants' cross-petition. The cross-petition alleges, in substance, that on September 1, 1944, defendant Caroline Lindley, then being the owner of said lot 11, block 1, executed her warranty deed conveying said property, with other property, to Paul Smith. The cross-petition then alleges, in substance, that in making said deed it was specifically understood between the grantor and the grantee that there was but one house located on said lot 11, and that neither the grantor nor the grantee thought or understood that the improvements then on said lot consisted of more than one house, and that neither the grantor, Caroline Lindley, nor the grantee, Paul Smith, knew, or had any idea that the house now occupied by Melvin H. Pickering and Mrs. Melvin H. Pickering was located on said

lot 11, instead of lot 10, which is directly north of said lot 11, or that there was any house on said lot 11 other than the one south of a fence which runs east and west on said lot 11, and that neither party intended that the deed was to convey any improvements other than the one house located south of the fence above referred to, and that the deed, insofar as it purports to convey said lot 11 and "all the improvements thereon" was a mutual mistake insofar as it included the other house on said lot; that long after said deed was executed and delivered, it was discovered that the house occupied by said Pickering and wife was actually located on said lot 11, instead of on lot 10. Still another house was located partly on lot 11 and lot 10, which house had been removed; that the consideration paid for said lot 11 was inadequate and insufficient, or, as stated by defendants, "inconsiderate and insufficient" for the lot, together with all the buildings that were actually located thereon at that time.

The prayer was for a decree reforming said deed so as to conform to the real intention and purpose of the parties, and for a decree that the property actually conveyed was lot 11 in block 1 in Main Street addition to the city of Sapulpa, and the one house located on said lot and south of said fence, and that all other improvements on said lot north of said fence, including the house in which Mr. and Mrs. Melvin H. Pickering are living, are the property of defendant, Caroline Lindley, and that she be given a reasonable time to remove said improvements from said lot 11 and for such other and further relief in equity as the court may find defendants entitled.

Plaintiffs filed a reply to the answer and cross-petition consisting of a general denial and a specific denial of any oral agreement or understanding with defendants, or any of them, save and except as reflected by the deeds executed, and allege that said deeds correctly reflect the only agreement and understanding between the plaintiffs and defendants at any time, and further specifically allege that if any collateral agreement or understanding was had, which plaintiffs deny, such agreement or agreements are invalid and not binding on plaintiffs because they were not reduced to writing.

The issues thus joined were tried to the court, resulting in findings of fact and conclusions of law to the effect that Caroline Lindley executed her warranty deed conveying said lot 11 to plaintiff, Paul Smith; and that when said deed was executed it was definitely the opinion and intention of both the grantor and the grantee that there was only one residence located on said lot, when, as a matter of fact, there were three residences thereon; that said deed conveying said lot, together with all improvements thereon, and thereunto belonging, entirely failed to state the sale or contract really entered into by the parties; that, as a matter of law, plaintiff Paul Smith purchased and paid for said lot 11 and the one dwelling house located further south on said lot; and that he and his wife, Louise E. Smith, are the owners and in possession of the same, and that the two houses on the north side of said lot were not conveyed to Paul Smith by said deeds. Decree was entered accordingly, decreeing said lot 11, and the dwelling house on the south part of said lot, to plaintiffs, and decreeing all other houses located thereon at the time said deed was executed to be the property of defendant Caroline Lindley, and allowing her 30 days from the date of the final judgment to remove said improvements from said lot.

After unsuccessful motion for new trial, plaintiffs appeal.

There are ten assignments of error. Assignments 1, 2, 7, 8, and 9 all go to the question of the sufficiency of the evidence.

Assignments Nos. 3 and 4 go to the alleged admission of evidence by defendant claimed to be incompetent and

the rejection of evidence offered by plaintiff.

Assignments Nos. 5 and 6 go to the sufficiency of defendants' cross-petition.

Assignments Nos. 3, 4, 5, and 6 are not presented in the briefs, and will be treated as abandoned.

An action for the reformation of a deed, based upon mistake of fact, is an action of equitable cognizance. The general rule is that when, because of a mistake of fact, an instrument does not express the true intention of the parties, equity will correct such mistake unless the rights of third parties intervene. 53 C.J. 929.

The principal question is: Whether the findings and decree of the trial court are clearly against the weight of the evidence. We deem it unnecessary to set out or discuss the evidence in detail. It is sufficient to say that examination of the record will disclose that the findings and decree are not clearly against the weight of the evidence.

There is some conflict in the evidence, but from the record, as a whole, it appears that the decree is in accord with and supported by the weight of the evidence. Testimony of the defendants, received without objection, was that in the negotiation for the sale of the property, defendants' agent, Florence Lindley, went over the premises with plaintiffs, pointing out to them what she understood to be the north boundary of lot 11, which boundary was marked by a fence, the house in question being on the north side of the fence. The only evidence on this point is the undisputed testimony of Florence Lindley. It is as follows:

"Q. Now, did you subsequently go anywhere with them and look at the property? A. Yes, after they decided they wanted it. Q. Tell the court what you all did in regard to it? A. It was lot 11, and Mr. Smith asked me to show him the line, and we walked over there. There was a fence where it had stood for twenty years, on the property, the dividing line of 9 and 10 from it, and I told him that was the property and it contained approximately (sic) five acres, or more, and they said they wanted it. Q. Now, did you explain to him where the house stood on the property? A. Yes, they came out of it to come to my house. Mr. Young: We object to it as leading. By the Court: Yes, you did—Mr. Wallace: I did lead some. By The Court: All right, now don't—Mr. Wallace: After you told him it contained one house, now did you show him the line on the property between 11 and 10 and 9? A. I did."

It also appears from the evidence that after it was discovered by the parties that the fence was not the north boundary of lot 11, and that the house in question was in fact located on lot 11, the plaintiff offered to buy the house of defendants and pay $750 therefor. Plaintiffs did not controvert any of this testimony. Under the record, defendant was entitled to reform the deed to make the description contained therein exclude therefrom the land north of the fence, as well as the house located thereon.

Plaintiffs cannot complain of the failure of defendant to ask for all the relief to which she may have been entitled.

Plaintiffs contend that this is not only a proceeding to reform the deed from Caroline Lindley to Paul E. Smith, but is also a proceeding for the reformation of a quitclaim deed from William Wells and wife to Paul E. Smith, and assert that there is no evidence whatever as to any mistake in that deed. This contention is entirely without merit. The record and evidence show that some two years before the sale of the lot herein involved, Caroline Lindley had conveyed said lot 11 to one William Wells; that Wells thereafter became dissatisfied with his purchase because the property was subject to overflow and that Caroline Lindley paid back to Wells his purchase price ($2,000) and William Wells and wife executed a quit-

claim deed conveying said lot back to Caroline Lindley; that said quitclaim deed was never placed of record —was lost, and could not be found; that when the abstract was examined in connection with the sale of the lot to Smith, William Wells was still the record owner of said lot; that to correct said defect in the title, a quitclaim deed was procured from Wells and wife; that at that time the deed from Caroline Lindley had been executed and that instead of making the quitclaim deed to Caroline Lindley, it was made by Wells to Paul E. Smith.

It thus appears that when said quitclaim deed was executed, William Wells did not own any interest in the lot, although he appeared to be the owner of record thereof.

There being no error, the judgment is affirmed.

CORN, GIBSON, LUTTRELL, HALLEY, and JOHNSON, JJ., concur. DAVISON, C.J., and WELCH, J., dissent.