WATKINS et al. v. MUSSELMAN et al.

No. 34587.    Dec. 26, 1951.

*239 P. 2d 418.*

C. B. Rogers and George W. Reed, Jr., Tulsa and E. C. McMichael and George H. Jennings, Sapulpa, for plaintiffs in error.

John H. Poe and Ben L. Murdock, Tulsa, for defendants in error.

O'NEAL, J.    This was an action in equity to cancel two separate deeds executed and delivered by Ollie M. Brown to Patti Musselman on November 18, 1936, and which deeds were recorded on November 28, 1936.    The property conveyed, as described in one deed, covered the southwest quarter of the northwest quarter and lots 3 and 4 and the southeast quarter of the northwest quarter of section 2, township 17 north, range 14 east, Tulsa county, Oklahoma, containing 159.63 acres.    The other property conveyed is described as lot 11, block 2 in Lakeview addition to the city of Tulsa, Oklahoma.    It is contended by plaintiffs that the deeds were not voluntarily executed by Ollie M. Brown in that she was mentally and physically incapacitated to exercise a free and voluntary act in view of the fiduciary relationship

existing between Ollie M. Brown and Patti Musselman. The judgment below was in favor of the named defendants in error.

The parties will be referred to as plaintiffs and defendants as they appeared in the trial court, or for clarity, as Ollie M. Brown and Patti Musselman.

This is the second appeal on the controversy between these parties and their privies in interest. As there is some disagreement as to the legal affect of our opinion in Owens et al. v. Musselman et al., 190 Okla. 199, 121 P.2d 998, we will restate what we deemed the controlling issues there involved.

The facts pleaded (which are substantially the same as pleaded in the present case) and the proof submitted by the plaintiffs in support thereof were held by this court to establish a prima facie case of fraud and undue influence, and, therefore, requiring defendants to go forward with proof to show they acted in good faith and that the decedent, Ollie M. Brown, intended to and did execute the deeds as gifts. This court, therefore, held that the defendants' demurrer to the plaintiffs' evidence was improperly sustained, and thereupon remanded the case for retrial. The opinion specifically holds:

"Fraud and undue influence will not be presumed, but ordinarily must be proven by clear, cogent and convincing testimony."

This court, in its consideration of the lower court's order sustaining defendants' demurrer, stated:

"However, where fraud and undue influence are alleged and facts sufficient to show inadequacy of consideration and confidential relationship are proven, the one occupying such a position of confidence will be required to go forward and make a full and complete disclosure showing absolute good faith and that there was no fraud or undue influence practiced in the transaction between the parties."

That the court so intended to hold is amply fortified by its holding in Montgomery v. Wilbanks, 198 Okla. 684, 181 P.2d 240, wherein the rule restated is based on Owens v. Musselman, supra, and upon prior decisions of the court referred to in the opinion. This position is sustained in Bergman v. Smalley, 205 Okla. 313, 327 P. 2d 881.

The law is well settled by our decisions that in a case of equitable cognizance the judgment of the trial court will not be disturbed on appeal, unless the same is clearly against the weight of the evidence. McBride v. Bridges, 202 Okla. 508, 215 P.2d 830; Smith v. Lindley, 202 Okla. 501, 215 P.2d 566, and Hamel v. Toronto Investment Company, 202 Okla. 553, 216 P.2d 319. This court, in the last cited case, held:

"In a suit of equitable cognizance the judgment of the trial court based on conflicting testimony will not be disturbed except upon a showing that said judgment is clearly against the weight of the evidence. Where the finding of the trial court is general, such finding is a finding of each special thing necessary to sustain the general finding."

A consideration of plaintiffs' amended and substituted petition discloses that plaintiffs charged that at the time Ollie M. Brown executed the deeds in question, because of her physical and mental condition, she was incapable of exercising an independent judgment, and that Patti Musselman, standing in a fiduciary relationship to her, exercised an undue and an unlawful influence upon her resulting in the execution of the deeds.

The record discloses that plaintiffs entirely abandoned all claim that Ollie M. Brown was incapacitated mentally to execute the deeds in question. Counsel for defendants propounded the question:

"Now I want to get clear on this question of mental incompetency, do I understand now that it is stipulated in the record that there is no question as

to the mental capacity of Ollie M. Brown on the date of the execution of these deeds?"

To which counsel for the plaintiffs replied:

"I thought I made my position clear, that we were not contending that in the month of November 1936, Ollie M. Brown was an incompetent person."

The determinative issue presented is whether the relationship existing between Ollie M. Brown and Patti Musselman was of a confidential relationship and whether Patti Musselman did exert an undue influence upon Ollie M. Brown, thereby destroying her free agency at the time the deeds were executed. If so, the deed should be canceled. If not, the judgment below should be affirmed.

We will note certain facts, as shown by the record, which are not in dispute. The plaintiff, Albert Poage Owens, was an uncle; Daisy Watkins, an aunt, and Nellie Sullivan, a niece of the deceased, Ollie M. Brown. The defendant, Patti Musselman, and her husband, Henry Musselman, bore no blood relationship to Ollie M. Brown, but were friends for many years prior to the execution of the deeds in question. The defendant, K. L. Laufman, was a mortgagee under a mortgage deed executed by Patti Musselman covering lot 11, block 2, in Lakeview addition to the city of Tulsa; this property having theretofore been deeded by Ollie M. Brown to Patti Musselman. The intervener, F. J. Bays, was the administrator of the estate of Ollie M. Brown who filed a petition of intervention claiming jurisdiction to administer upon the personal property of Ollie M. Brown, deceased. K. L. Laufman, the mortgagee in the mortgage on the lot above described did not file a petition in error in this court. The administrator of the estate of Ollie M. Brown filed a petition in error, but has failed to make an appearance or file briefs. In the disposal of the case, no further consideration will be given the claim of the intervener, F. J. Bays, the administrator, or the defendant, K. L. Laufman.

All other plaintiffs and defendants, other than the original parties to the case, stand in privity with their ancestors and assert no other rights than set forth in the original pleadings in the case.

Certain motions for dismissal of the appeal are presented by the defendants and certain motions of the plaintiffs to dismiss defendant's cross-petition in error are presented and urged upon our consideration for review. But in view of our disposition of the case on its merits, it is unnecessary to rule on the motions.

The record is voluminous, and the facts disclosed thereby, the probative value thereof, and inferences to be drawn therefrom, are always open to debate.

Ollie M. Brown was the owner of 159.63 acres of land which she had received as an allotment as a member of the Creek Tribe of Indians. She also owned a residence in Tulsa, Oklahoma. She had married a Doctor Brown, a druggist, who predeceased her. She died in July, 1937, intestate, without husband, child, or descendants of children, father or mother, and without brothers and sisters living. Mrs. Brown and Patti Musselman were very close friends for many years prior to Mrs. Brown's death.

After the death of her husband, Mrs. Brown lived in the Musselman residence for a period of about a year, after which she returned to her own residence where she and the Musselman family lived until her death. During her residence in Tulsa she received sporadic visits from several persons bearing a relationship of affinity and consanguinity. No close friendship existed between her remote relatives and herself. She frequently stated that she had no close relatives and that the relatives referred to didn't care for her, nor she for them. In November, 1936, Mrs. Brown became ill and at her phy-

sician's suggestion went to a local hospital for a check-up and treatment. An operation later disclosed she had cancer. She died the following July, 1937.

During her last illness she suffered a great deal of pain and she had lost much weight, and because visitors annoyed her she suggested to Mrs. Musselman, as well as her nurse and the maid in the house, that she didn't want to see some of the persons who were calling to visit her. On several occasions she deviated from this request, and instructed either Mrs. Musselman, the nurse, or the maid to permit certain callers to make brief visits. Intimation is made by plaintiffs that Mrs. Musselman kept the callers from seeing Mrs. Brown, but the record does not bear out this supposition.

Shortly before her death Mrs. Brown requested that her coffin be not opened at the funeral services. The mortician in charge stated that such requests were frequently made.

In the fall of 1936 a tenant on the farm land called at the Musselman residence to request Mrs. Brown to execute a renewal of the farm lease. Mrs. Brown told him he would have to take up the matter of a renewal with Mr. Musselman. When the tenant's request for a renewal was presented to Mr. Musselman he told the tenant that he would have to take Mrs. Brown's name out of the lease and substitute his name. This was done, the annual rental was paid by the tenant to Mr. Musselman, and thereafter Mr. and Mrs. Musselman visited the tenant at the farm.

Dr. George H. Miller, a physician and surgeon, who had known the Brown and Musselman families for a period of 20 years, and who was Mrs. Brown's personal physician, and had advised her in business transactions on numerous occasions, testified that he received a phone call from Mrs. Brown requesting that he call at her residence to discuss a matter of business. Mrs. Brown stated to him that she intended to leave her property to Mrs. Musselman and asked the Doctor if he thought she should leave it by will, or deed it outright. He told her that if she had definitely made up her mind to leave her property to Mrs. Musselman he thought the best way to handle it would be to deed it outright. Mrs. Brown expressed a desire to dispose of the property before she went to the hospital for the operation. Some days after this conversation Mrs. Brown again asked Doctor Miller for his advice on the matter and he stated "I suggested that if she wanted to leave Mrs. Musselman the property, probably the easiest way to do it would be to deed it to her while she was alive, not wait and go through the problem of a will that might be questioned." That Mrs. Brown then stated: "I want Mrs. Musselman to have this property, and I don't want any quarrel or fuss over it with my relatives."

After this last conversation with Dr. Miller, Mrs. Brown phoned R. E. Morgan, a member of the bar with offices in Tulsa, Oklahoma, and requested that he call on her as she wished to consult him with reference to some property. Mr. Morgan called at her residence and the disposition of her property was discussed. Some days later she called at Mr. Morgan's office and she and Mr. Morgan entered his private office where he exhibited to her two deeds which he had prepared in conformity with her previous request. These deeds covered the farm land and the city property in controversy. Mrs. Brown signed each of the deeds and a notary public was called in who asked Mrs. Brown whether the deeds contained her signature, and upon being advised that Mrs. Brown signed them, the notary notarized the instruments and handed them back to Mr. Morgan. The notary then re-entered the reception room, and a short time thereafter Mr. Morgan and Mrs. Brown returned to the reception room where Mrs. Musselman had been waiting. Mrs. Brown, Mr. Morgan and Mrs. Musselman entered into a general conversation at the end of which

Mrs. Brown handed the two deeds to Mrs. Musselman with the statement "Patti, these are yours." About ten days after this transaction, Mrs. Musselman recorded the deeds in question.

The notary taking the acknowledgments substantially supports the statement of Mr. Morgan with reference to the transactions occurring in Mr. Morgan's office at the time of the execution and delivery of the deeds.

After her return from the hospital in November, 1936, and subsequent to the execution and delivery of the deeds, Mrs. Brown, while convalescing, told her nurse that she had the deeds signed and that everything was fixed up; that Mr. Morgan, her attorney, had handled the matter for her, and that she had given the deeds to Mrs. Musselman. The record is silent that Mrs. Brown ever referred to the matter of the deeds after she last discussed it with her nurse.

As we view the plaintiffs' evidence it, at most, discloses that Patti Musselman had an opportunity to unduly influence Mrs. Brown, not that she in fact did so.

We held in Re Sporn's Estate, Sporn v. Herndon, 190 Okla. 149, 121 P. 2d 602, that:

"Power, motive, and opportunity to exercise undue influence do not alone authorize the inference that such influence has in fact been exercised . . . ."

To the same effect is Peace v. Peace, 149 Okla. 123, 299 P. 451, and Canfield v. Canfield, 167 Okla. 590, 31 P.2d 152.

In Melton v. Melton, 192 Okla. 285, 135 P.2d 43, we held:

"To set aside any transaction on the ground of undue influence, it must be shown, not only that such influence existed and that it was exercised, but also that it was exercised effectively; that is, that it was the efficient cause in bringing about the transaction complained of.

In Williams v. Church, 200 Okla. 646, 198 P.2d 995, the court adopted, with

approval, the holding of the court in Antle v. Hartman, 193 Okla. 524, 145 P.2d 756, where it was said:

"Undue influence to vitiate a conveyance must destroy the grantor's free agency at the time the conveyance is executed and must, in effect, substitute the will of another for that of the grantor."

Our former opinion, Owens v. Musselman, supra, was based on the allegation of the plaintiff that the deeds were obtained by fraud and undue influence, and were therefore void; that where confidential relationship is shown to exist, that fact raises a presumption that the transaction was tainted and fraudulent; that when this presumption arose it then became the duty of the defendant to purge himself of the implication of wrongdoing. The case of Owens v. Musselman, supra, is based on this court's pronouncement in Weitz v. Moulden, 109 Okla. 119, 234 P. 583, which holds:

"When confidential relations existing between two persons result in one having an influence over the other, and a business transaction takes place between them resulting in a conveyance to a person holding the influence over him, the law presumes everything against the transaction and leaves the burden of proof upon the person benefited to show that the confidential relation has been as to that transaction suspended, and that it was as fairly conducted as between strangers."

An examination of the record, in view of the authorities cited, leads to the conclusion that the evidence establishes to a moral certainty that Patti Musselman did not exercise an undue influence over Ollie M. Brown so effectively that it was the efficient cause in bringing about the transaction complained of.

As the proof amply supports the findings that the deeds were signed and acknowledged by Mrs. Brown in the office of her attorney, and were delivered by Mrs. Brown to Mrs. Musselman who thereafter recorded the same,

there arises a presumption that the delivery of the deeds vested a present title in the grantee named therein.

In Abrams v. Neal, 178 Okla. 158, 61 P.2d 1103, we held:

"Possession of a deed by the grantee is prima facie evidence of delivery, but is open to attack, and the burden rests upon the plaintiff to show by clear and convincing evidence that the deed had never actually been delivered."

In McKeever v. Parker, 204 Okla. 1, 226 P.2d 425, we held:

"Delivery of a deed is essential to pass title. Recordation of a duly executed deed raises a presumption of delivery as of the date of execution. The burden of proving nondelivery is upon the party alleging nondelivery."

This burden of proof was not sustained by plaintiffs. Their only answer thereto is contained in their argument that it is highly improbable that Mr. Morgan, Mrs. Brown's attorney, would recall a transaction of this character some years after the transaction occurred. That he did recall it is corroborated by other facts and circumstances in the case. However, the burden of proof may have shifted as the case progressed, the plaintiff still had the final burden of proof to sustain the allegations of the petition. We so held in our former opinion in Owens v. Musselman, supra, where we said:

"Fraud and undue influence will not be presumed but ordinarily must be proven by clear, cogent and convincing evidence."

As we view the record it is incontrovertibly shown that Ollie M. Brown was not mentally or physically incapacitated to make a disposition of her property by gift. The plaintiffs are all of a remote relationship and no close friendship existed between them and Mrs. Brown. There is an abundance of evidence establishing a very close friendship covering a period of many years between the grantor and grantee in the deeds. When Mrs. Ollie M. Brown was advised that she would have to submit to an operation, it was quite natural that she would give consideration to the disposal of her property. It was only upon the method of its disposal that she sought advice. She contacted Doctor Miller, her personal physician and a friend for the past seventeen years, and advised him that she intended to leave her property to Mrs. Musselman and asked him whether she should do so by will or by deed. The Doctor told her that if she wanted Mrs. Musselman to have the property, that he thought it would be better to deed it outright. After this she phones her attorney, a member of the bar, practicing his profession at Tulsa, and asked him to call on her at her home as she desired some legal advice on the disposition of her property. Some time after consulting her attorney she went to his office, executed the deeds in question, they were acknowledged before a notary public, and were delivered by the attorney to Mrs. Brown and in turn by her to Mrs. Musselman.

The facts and all reasonable inferences to be drawn therefrom lead to but one conclusion, and that is that the deeds were executed and delivered as the free and voluntary act of the grantor, and that the transaction is free of any undue influence, or fraud, as alleged.

The judgment of the lower court is affirmed.

HALLEY, V.C.J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.