**E. F. FISK, Plaintiff in Error,**

**v.**

**C. E. KUNDERT et al., Defendants in Error.**

**No. 41715.**

Supreme Court of Oklahoma.

April 23, 1968.

Ogden & Ogden, Guymon, for plaintiff in error.

Tryon, Sweet & Hensley, by L. E. Tryon, Guymon, for defendants in error.

DAVISON, Justice.

E. F. Fisk (plaintiff below) appeals from a judgment rendered in favor of Grace A. Crismon and W. O. Crismon (defendants below) whereby the title to the surface of a tract of land in Texas County, Oklahoma, was quieted in the Crismons. The parties will be referred to by their trial court designation or by name.

The tract of land measures about 452 feet (north and south) by 1912.5 feet (east and west) and is located along the south boundary line of Texas County, Oklahoma, and next to the State of Texas on the south. It is presently described as the East 1912.5 feet of Lot 1, Section 2, Township 1, S., Range 11 East of the Cimarron Meridian, in Texas County, Oklahoma, containing 19.91 acres more or less. An error or miscalculation was made in the early surveys fixing the line between Oklahoma and Texas. The Cimarron Base Line (extending east and west) was mistakenly regarded as the line between the two States. When the true survey was eventually completed it was discovered that in the area of the present dispute there was a strip of land about 720 feet wide (north and south) between the Cimarron Base Line on the north and land to the south that had been surveyed and identified in Texas as Sec. 17, Block 1, Texas Public Free School Land. The true line between Oklahoma and Texas was located about 452 feet south of the old Cimarron Base Line and the land now in dispute is a part of that now located in Oklahoma between the true line and the Cimarron Base Line. Title to this formerly unidentified land had remained in the Federal Government.

On August 7, 1946, Congress enacted 60 Stat. 872, providing that, under regulations prescribed by the Secretary of Interior, citizens who had used, improved, or cultivated these lands in connection with abutting land, in good faith in peaceful and adverse possession for 20 years could receive a patent, less the minerals, for $1.25 per acre. There is no dispute that persons named Flater had owned Sec. 17, supra, to the south in Texas, and that they used and possessed the lands between Sec. 17 and the Cimarron Base Line to the north. In fact, A. A. Flater had built a slaughter house and refrigeration plant upon the tract of land now in dispute.

On December 19, 1944, the Flaters and one Kundert entered into a written agreement and a lease by which the subject tract and improvements and the other land south to Sec. 17 in Texas was leased to Kundert for 99 years with an option to Kundert to purchase at any time prior to the expiration of the lease, after it was determined to whom the fee title belonged, and binding the Flaters and their grantees of the title

to Sec. 17 to procure a patent to the land at the first opportunity. The consideration for the lease and option was $7500, of which $1000 was placed in escrow with the lease, and the balance to be paid from one half of the gross receipts of the slaughter house operation. Kundert was also to pay the amount of money necessary to obtain a patent from the State of Texas or the United States Government.

On January 9, 1945, the Flaters conveyed Sec. 17 and the land between it and the Cimarron Base Line to the north to Grace A. Crismon by a deed containing a recital that the conveyance was subject to the 99 year lease from the Flaters to Kundert, "dated December 19, 1944." Thereafter, on October 23, 1948, the defendants Crismon, as owners of Sec. 17 and as persons qualified to receive a patent to the subject property, made application to the Department of the Interior for a patent thereto under the provisions of 60 Stat. 872, supra. The application also recited that Kundert held a 99 year lease on part of the property. Kundert joined in the application and requested that the land be patented to the defendant Grace A. Crismon. A patent was issued to the defendants Crismon bearing date of October 20, 1949.

In the meantime on February 14, 1949, Kundert gave the plaintiff Fisk a note for $3500, due February 14, 1950, secured by a mortgage on "37 acres in Northeast corner of Northeast quarter" of Sec. 17, supra, in Sherman County, Texas, "including all refrigeration, butchering and lighting equipment on said premises," and covering the lease on the described premises "which lease is dated December 19, 1944" by the Flaters in favor of Kundert. This mortgage was filed of record in Sherman County, Texas. It is obvious that there is a discrepancy in describing the security in the mortgage, because the description does not include the real property covered by the lease. On January 16, 1950, Kundert, for a recited consideration of $10 and oth-

er valuable considerations, assigned to the plaintiff Fisk the 99 year lease executed by the Flaters (describing the property covered by the lease) and including all buildings and improvements on the tract of land. The assignment further provided that the assignment "shall have all the force and effect as if the said E. F. Fisk had been the original lessee therein" and possession was forthwith delivered to Fisk. On the same date Kundert, for a recited consideration of $5, gave Fisk a Bill of Sale covering all equipment, including refrigeration, butchering and lighting equipment, covered by the mortgage of February 14, 1949, from Kundert to Fisk.

Fisk's suit set forth two causes of action. In the first cause of action he alleged he was a mortgagee in possession and sought foreclosure of his $3500 mortgage as a lien upon the portion of the real property located in Oklahoma. In the second cause of action Fisk, as successor to Kundert, sought to enforce the option to purchase contained in the 99 year lease.

The Crismons answered that the 99 year lease was void because the land belonged to the Federal Government at the time it was made, that the action on the note and mortgage was barred by limitations, that they (Crismons) and their predecessors had been in adverse possession for more than 15 years and owned the property under the patent, and asked that their title be quieted.

The lower court found, that the plaintiff Fisk had failed to sustain either of his causes of action, that the Crismons were the owners and in possession of the surface estate of the subject property and other adjoining property and quieted title in the Crismons.

Fisk contends that the 99 year lease with the option to purchase provision therein between the Flaters and Kundert is valid, even though there was no Act of Congress at the time by which title could be acquired.

■ In the early case of McKennon v. Winn, 1 Okl. 327, 33 P. 582, 22 L.R.A. 501, we stated as follows:

"Unless forbidden by positive law, contracts made by actual settlers, concerning their possessory rights, and concerning title to be acquired in the future from the United States, are valid, as between the parties, though there be at the time no act of congress by which title may be acquired."

See also Freeland v. Dolen, 84 Okl. 286, 203 P. 182, for a like statement of law.

■ It is our conclusion that the 99 year lease and the option provision therein between the Flaters and Kundert was a valid agreement.

This brings us to a determination of the legal relationship between Fisk and the Crismons and the rights and obligations existing between these parties.

There is some testimony in the record that the Crismons were not aware and had no notice that an option to purchase provision was in the 99 year lease.

We fail to see how the Crismons could have justifiably remained ignorant of such provision. The deed by which Grace A. Crismon took title on January 9, 1945, to Sec. 17 and acquired all the right and title of the Flaters in the subject tract of land expressly stated the conveyance was subject to a prior 99 year lease to Kundert. Furthermore, the record shows that Kundert was in possession and was operating the slaughter house and refrigeration plant on the subject property. The possession was notice of the interest Kundert had in the property.

■ In Geb v. Wilkins, Okl., 399 P.2d 456, 459, we quoted with approval as follows:

" 'The possession of real property carries with it the presumption of ownership, and it is the duty of those purchasing such property from others than those in possession to ascertain the extent of their claims; and the open actual possession of such property gives notice to the

world of just such interest as the possessor actually has therein.' "

The defendants Crismon urge in support of the judgment that when Kundert joined with the Crismons in applying to the Federal Government for a patent and requested that the patent be issued to Grace A. Crismon, this constituted an exercise of his right under the lease option agreement. The implication being that Kundert apparently elected to relinquish title to the Crismons. No authority is cited to support this proposition.

■ It appears to us that the answer to this contention is found in an understanding of the contractual relations of the parties. Under the lease Kundert had an option to buy when it was established to whom the fee title belonged and the Flaters bound themselves and their grantees to Sec. 17 to procure a patent at the first opportunity. The correction survey established that the title was in the United States and the Act of Congress provided the grounds for procuring a patent. Grace A. Crismon, as successor owner to Sec. 17, had the right and was bound to apply for a patent. We fail to see that the joinder of Kundert in the application for patent evidenced anything more than an effort by an interested person to have title transferred from the United States to the Crismons in order that the option to purchase could then be legally exercised at some time prior to the expiration of the lease. This was exactly what was contemplated under the terms of the lease. The patentees Crismon thereupon became obligated to convey to the person owning the option to purchase.

This brings us to a determination of the status of Fisk as holder of a mortgage or as owning all the original rights of Kundert to exercise the option to purchase.

The defendants Crismon alleged the debt secured by the mortgage was barred by limitations. The debt was due February 14, 1950, and the present action was filed by Fisk September 12, 1962. Obviously more than 5 years had expired and the pe-

riod of limitations was complete, except that it may have been tolled by circumstances which we need not discuss or determine.

As above stated, on January 16, 1950 (prior to maturity of the debt), Kundert and his wife assigned to Fisk the 99 year lease with the agreement that the assignment have all the force and effect as if Fisk had been the original lessee. This made Fisk the owner of the option to purchase. On the same date Kundert and his wife gave Fisk a Bill of Sale to the slaughter house and refrigeration equipment located on the subject property. The record reflects that Kundert entered upon the property when he acquired the lease and operated the above business and was in possession when the assignment and bill of sale were executed. The record clearly reflects that Fisk then took possession and remained in exclusive possession by his tenants to and at the time of trial. The plaintiff Fisk secured possession of the original agreement and original 99 year lease between the Flaters and Kundert and these were introduced in evidence.

■ From our examination of the record and the testimony of Fisk we are convinced and conclude that Fisk accepted the assignment and bill of sale in satisfaction of the debt and mortgage, and not as any sort of further security, and that Fisk became the complete owner of such lease and property. The Kunderts were made parties to the action and made no appearance.

■ This court has held that a mortgagor may convey the mortgaged property to the mortgagee in satisfaction of the mortgage indebtedness, and that the mortgagee may purchase from the mortgagor, if the transaction is fair, honest, and without fraud or undue influence, and where no unconscionable advantage is taken by virtue of the relation existing between the mortgagor and mortgagee. Williams v. Church, 200 Okl. 646, 198 P.2d 995; Stallings v. Little, 191 Okl. 399, 130 P.2d 525; Coursey v. Fairchild, Okl., 436 P.2d 35.

There is no evidence in the record that the transfers from Kundert to Fisk were not fair and honest, and there is no evidence of fraud and undue influence in connection with such transfers.

During the trial Fisk tendered to the Crismons the money necessary to obtain a patent to the subject property from the United States Government.

It is our conclusion that the judgment is against the clear weight of the evidence.

The judgment is reversed, and upon determination of the amount due the Crismons in securing the patent, supra, and payment thereof, the lower court is directed to render judgment quieting title to the subject property in Fisk.

All the Justices concur.