**W.P. CARLILE and Violet Carlile Enlow, Appellants,**

**v.**

**J.C. CARLILE, Claude Carlile, and Veda Carlile Lawson, Appellees.**

**No. 73207.**

Supreme Court of Oklahoma.

May 5, 1992.

B. Kent Watson, Savage & Watson, Tishomingo, for appellants.

Kenneth L. Delashaw, Jr., Burns & Delashaw, Inc., Marietta, for appellees.

ALMA WILSON, Justice:

On September 12, 1968, two warranty deeds and one mineral deed were executed by Paul L. Carlile, a widower, before a notary public. One warranty deed granted a certain parcel of land to Claude E. Carlile, one of Paul's sons. One warranty deed granted a separate parcel of land to Paul's daughter, Violet Enlow, and her husband, John D. Enlow. The mineral deed granted 90/160ths of all the oil, gas and other minerals from a certain described parcel of land to "Violet Enlow, Claude E. Carlile and William P. Carlile Share [sic] and share alike." William, also known as Jack, was another of Paul's sons. The two warranty deeds were filed; the deed to Violet and her husband was filed on May 8, 1969, and the deed to Claude was filed on October 9, 1973. The mineral deed was never filed.

On August 15, 1973, Paul L. Carlile died and his estate was subsequently probated.

J.C. Carlile, a third son, was appointed administrator of the estate. He intentionally omitted the mineral interests specified in the mineral deed from the estate inventory of assets. As a result, those interests were not distributed in the final decree. The mineral deed was not in the possession of any of the named grantees. Only the fourth sibling, J.C., knew of its location. When Jack and Violet learned that the mineral deed had not been recorded, they contacted J.C. to insist that he record the deed. In a recorded telephone conversation between Violet and J.C., he stated that he would not record the deed unless each of his siblings conveyed five acres of the minerals back to him so he could have the controlling working interest. They refused and Jack and Violet filed suit to quiet title. Claude refused to join them as a plaintiff and so was added as a defendant. The trial court ruled for the defendants. The Nunc Pro Tunc Journal Entry of Judgment found the deed to be null and void because there was no delivery of the deed as alleged in the plaintiffs' petition. The Court of Appeals affirmed the judgment of the trial court.

■ Actions to quiet title are equitable in nature. *Keith v. Lawson,* 195 Okla. 157, 155 P.2d 716 (1944). In a case of equitable cognizance the judgment of the trial court will not be disturbed on appeal unless clearly against the weight of the evidence. *Watkins v. Musselman,* 205 Okla. 514, 239 P.2d 418, 420 (1951). To determine if the judgment is against the clear weight of the evidence the appellate court will examine the whole record and weigh the evidence. *Board of County Com'rs of Rogers County v. Cottingim,* 448 P.2d 1014, 1017 (Okla.1969). If the judgment of the trial court is against the clear weight of the evidence, the appellate court will reverse the judgment. *Mayfair Building Co. v. S & L Enterprises, Inc.,* 483 P.2d 1137, 1139 (Okla.1971).

■ The judgment as included in the Petition in Error merely states that the "Court finds in favor of defendants." The Court of Appeals during its review process, on January 11, 1991, directed the appellant to obtain a nunc pro tunc journal entry of judgment that accurately and fully memorialized the adjudication. On January 28, 1991, the Nunc Pro Tunc Journal Entry of Judgment was filed in the appeal. The trial court found: "That there was no delivery of the deed as alleged in plaintiffs' petition and amendments thereto covering the ... described property." The issue presented on appeal is whether the trial court committed reversible error in ruling that delivery did not occur.

■ Delivery of a deed is essential in order to pass title. A valid delivery occurs only when the grantor parts with dominion over the deed with the intention to pass title. *Brown v. Peck,* 335 P.2d 907, 910 (Okla.1959). Violet testified that her father had told her that he was making a deed leaving ninety mineral acres to be divided equally between Jack, Claude and herself. She testified that the following weekend her father told her that he had done it and that J.C. had the deeds and would record them. Jack testified that on a Saturday he and his father were talking and the father told him that he had something for him. The father went into the house, came back with the mineral deed and handed it to Jack. He told Jack that he had already given J.C. his thirty acres of minerals. Jack looked at it and remarked that it was a combination deed and the first one like it he had ever seen. His father replied that it was good and it just needed to be recorded. Jack told him that he would have to take time off of work to do so. Jack testified that his father suggested that Jack let J.C. file the deed. Jack stated that he pulled the deed out of his pocket and handed it to J.C. along with five dollars for a filing fee.

J.C. denied that the event Jack described ever happened. He did testify that shortly after his mother died his father "dissolved all the property to the kids." J.C.'s attorney offered the deed and an envelope that

had contained the deed into evidence. The items were subsequently admitted. J.C. testified that the envelope had at one time contained all three deeds. He said he was not sure that he had seen the face of the deed, but he knew what it was and that the envelope and the deeds were among the materials his father had brought to J.C.'s house. The envelope has writing on it that reads: "Keep deeds papers For Claude and Violet and mineral deed For Jack Claud [sic] Violet."

In his testimony J.C. denied that any minerals were to be left to anyone. But he did state that his father's intention was to equally divide the royalty. When cross-examined concerning the minerals that had been deeded to him, he stated that if his property had produced any income, the funds would have gone to his father. Shortly before the father died in 1973, he argued with Jack concerning the mineral interest Jack had in the real estate the father had quit claimed to Jack several years before. The father wanted Jack to divide the minerals and Jack refused. J.C. testified that this made his father angry and so he told J.C. that he intended to make some changes. The father apparently removed the mineral deed from the box at J.C.'s house and put it in the barn. He told J.C. that whenever Jack divided the royalty interest on his place, to find the deed in the barn and record it; but if Jack did not divide the interest then "don't find the S.B." Finally, as administrator of his father's estate, J.C. did not include the mineral interest covered in the mineral deed in the estate. Additionally, he treated the other two deeds, executed on the same day as the mineral deed, as valid and even defended Claude's deed in the probate when his stepmother challenged the deed.

 We hold that the clear weight of the evidence supports delivery of the mineral deed. We find that the father's stated intention that all his property be divided equally was effected by the three deeds executed on September 12, 1968. The clear weight of the evidence was that he deposit-ed those deeds with J.C., and two of those deeds were subsequently recorded and treated as valid by J.C. The father's subsequent decision to take the mineral deed back is irrelevant to his initial intention concerning delivery. When the owner of land executes a deed during his lifetime and delivers it to a third party who acts as a depository, intending at the time of the delivery to forever part with all lawful right and power to retake or repossess the deed, the delivery to the third party is sufficient to operate as a valid conveyance of real estate. *Anderson v. Mauk*, 179 Okla. 640, 67 P.2d 429, 431 (1937).

 Although fraud was alleged in the appellants' petition in the district court, the matter is not addressed in the Petition in Error. The appellants state that their relief being sought was "Judgment quieting title in Plaintiffs as co-grantees of a mineral deed to 90 acres of oil, gas and other minerals." The allegation of fraud is deemed to be waived. The judgment of the trial court is REVERSED. The opinion of the Court of Appeals is VACATED. The cause is REMANDED to the trial court for disposition in a manner consistent with the holding and reasoning in this opinion.

HODGES, V.C.J., and DOOLIN, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., and LAVENDER, SIMMS and HARGRAVE, JJ., dissent.