MORROW DEVELOPMENT CORPORA-
TION, an Oklahoma corporation, and
David Gordon Management, Inc., an
Oklahoma corporation, Plaintiffs–Ap-
pellees,

v.

AMERICAN BANK AND TRUST COM-
PANY, an Oklahoma banking cor-
poration, Defendant–Appellant.

Nos. 77034, 77128.

Supreme Court of Oklahoma.

Feb. 22, 1994.

Rehearing Denied June 28, 1994.

Gregory G. Meier, Gary L. Richardson, Tulsa, for plaintiffs-appellees.

Rodney A. Edwards, Jack R. Givens, Tulsa, for defendant-appellant.

OPALA, Justice.

The dispositive issue on certiorari with respect to plaintiff Morrow Development Corporation [Morrow or Borrower] is whether it was error for the district court *not* to enter judgment notwithstanding the verdict for the defendant-Bank, American Bank and Trust Company [Bank or defendant], when Morrow had failed to succeed upon any theory advanced to avoid the binding effect of its agreement with Bank for a deed in lieu of foreclosure? As for plaintiff David Gordon Management, Inc. [Gordon], the issue to be decided is whether it was *proper* for the Bank to engage in those activities which the jury found to have interfered with Gordon's rights under its contract with Morrow? We answer both questions in the affirmative.

■ The Bank's chief defense was *accord and satisfaction* and its proof consisted of Morrow's delivery of and its acceptance of a deed in lieu of foreclosure.[1] The *factum* of

---

1. Bank's pressed defense of *accord and satisfaction* is dispositive of the breach-of-contract claim by Morrow. Bank first advanced this defense in the pretrial order. *See infra* note 13. ' Bank's commitment to this position is illustrated by its continued quest throughout the trial and reviewing process for judgment notwithstanding the verdict upon the theory of *accord and satisfaction*. *See* (1) Bank's proffered jury instruction no. 12 [Appendix to Bank's brief-in-chief] which the trial court rejected; (2) Bank's motion and brief below (at page 22) for judgment notwithstanding the verdict; (3) proposition *II.C.* of its brief-in-chief at page 16; and (4) Bank's supplemental brief on certiorari at pages 2 and 3.

In each instance Bank's requested relief was rested on its defense of *accord and satisfaction*. Although this defense was raised on appeal, the Court of Appeals left the issue unsettled. [While Bank did not explicitly press *accord and satisfaction* in its certiorari petition, that theory is fairly comprised within its entreaty for judgment notwithstanding the verdict.] There is *nothing* in the record to indicate the Bank ever abandoned its defensive position. Rule 3.15, 12 O.S.1993 Ch. 15, App. 3, which preserves the accord and

this accord stands undisputed. The trial court found the Bank not to have breached any obligation of good faith and fair dealing nor to have engaged in economic duress in this transaction. The jury *exonerated* the Bank of any fraud. All of these *nisi prius* exculpatory findings—by the court and by the triers—stand unassailed by the post-verdict process. No counter-appeals were filed by Morrow or Gordon. It is for these reasons that all of Morrow's claims, resting, as they did, upon its pled tort theories, are now final and hence barred from relitigation by the *settled-law-of-the-case doctrine*.[2] In short, Morrow can no longer prevail on its breach-of-contract claim. This is so because its theory for avoiding the deed by which the encumbered land was conveyed to the Bank in lieu of foreclosure stands judicially rejected and beyond the reach of our review. While the Bank's acts undoubtedly affected Morrow's ability to perform the terms of its contract with Gordon, these acts—*principally* undertaken for the protection of Bank's legitimate economic interests—were clearly *proper*. They hence do not constitute *tortious* interference with the Morrow/Gordon management contract.

## I

### ANATOMY OF LITIGATION

In 1983 Morrow and Bank entered into negotiations culminating in a loan agreement for $1,000,000.00. This lending transaction was for development of real property in Broken Arrow and was secured by a real estate mortgage and guaranty agreement. The loan agreement required Morrow to engage the services of an experienced land developer [in this case David Gordon] to manage the real estate project. Morrow and Gordon executed a land development agreement naming Gordon as project manager. It is with this management contract that Gordon claims Bank tortiously interfered.

In 1985 Morrow negotiated with the Bank for the loan of an additional $500,000.00. They then executed a development loan agreement for $1,500,000.00 with a payoff provision for the prior loan. The new loan was structured as a line of credit. Advances, other than for interest remittance, were conditioned upon the sale of an additional ten lots in Phase I of the project. The lot sales required by this provision did not occur, and Bank did not make the advances of money Morrow needed to begin work on Phase II of the project. On November 5, 1986 Bank projected cost overruns and demanded additional security from Morrow and the guarantors. The additional security was not provided, and Morrow and the Bank entered into settlement talks. Morrow subsequently executed an agreement, warranty deed and estoppel affidavit [deed-in-lieu transactional documents[3]], transferring title to the mortgaged land to Bank.

satisfaction issue for today's review, was recently amended in *Hough v. Leonard*, Okl., 867 P.2d 438, 446 (1993). It states in pertinent part: "A. When a petition for writ of certiorari to review a decision of the Court of Appeals is granted, an order shall be entered to that effect. Issues not presented in the petition for certiorari will not be considered by the Supreme Court. *Provided, however, if the Court of Appeals did not decide all of the properly preserved and briefed issues, the Supreme Court may—should it vacate the opinion of the Court of Appeals—address such undecided matters or it may remand the cause to the Court of Appeals for that Court to address such issues . . . .*" [Emphasis supplied.]

**2.** Because the exculpatory findings in favor of Bank on the issues of good faith and fair dealing, economic duress, and fraud theories were not tendered for appellate review, they are settled. The *settled-law-of-the-case doctrine* operates to bar relitigation of issues in the case that are finally settled by an appellate opinion or those the aggrieved party failed to raise on appeal. *See Mobbs v. City of Lehigh*, Okl., 655 P.2d 547, 549 n. 5 (1982); *Panama Processes v. Cities Service Co.*, Okl., 796 P.2d 276, 283 n. 27 (1990). The unassailed part of the *nisi prius* judgment is to be deemed finally settled. *Handy v. City of Lawton*, Okl., 835 P.2d 870, 873 (1992); *see also Jones v. Medlock*, 201 Okl. 109, 202 P.2d 212, 214 (1949). The doctrine of *res judicata* is not applicable to our analysis because this case is still in the appellate process.

**3.** The market-place term "deed-in-lieu of foreclosure" is used for simplicity to describe a transaction in which a borrower, *after default*, conveys to its lender by *absolute* deed title to real property pledged as security for the indebtedness. The consideration for this conveyance consists of relieving the borrower of all *in personam* liability for the loan, including that which may arise under 12 O.S.1991 § 686 for post-judgment

In 1987 Morrow and Gordon filed suit alleging that Bank had (a) breached the terms of the lending contracts, (b) secured the deed-in-lieu documents through fraud and duress, (c) breached the obligation of good faith and fair dealing owed to Morrow, (d) breached an implied joint venture agreement, and (e) failed to indemnify Morrow for losses it had incurred as an implied agent of Bank. At the close of plaintiffs' case the court entered a directed verdict for the Bank on all of Borrower's theories of liability *except those of breach of contract and fraud.* The jury *then returned a verdict* (1) in favor of Bank on the fraud allegations, (2) for Morrow on the breach of contract claim, and (3) for Gordon on its tort claim. Bank moved for judgment notwithstanding the verdict on the claims of both Morrow and Gordon. The Bank's quest was denied.

Appeal was brought *solely* by Bank. No counter-appeal was pressed either by Morrow or Gordon. The Court of Appeals vacated the trial court's judgment for Morrow and Gordon and remanded their claims for new trial. The appellate court concluded that the *nisi prius* court had committed fundamental error by failing to instruct the jury on the effect to be given the parol evidence adduced at trial. This evidence conflicted with the specific written terms of Morrow's loan agreements.[4] The Court of Appeals pronounced that, apart from the jury finding [that Bank had breached its contractual obli-

gations to Morrow], there was "little or no" evidence of Bank's *wrongful* interference with Gordon's contract with Morrow. Bank, Morrow and Gordon each sought certiorari. We now hold that Bank is entitled to judgment notwithstanding the verdict on both Morrow's claim for breach of contract as well as on Gordon's claim for tortious interference with existing contractual relations.

## II

### THE DEED–IN–LIEU TRANSACTION IS AN ACCORD AND SATISFACTION WHICH DISCHARGES THE OBLIGATION OF UNDERLYING LOAN CONTRACTS

 In the evidence adduced are documents titled agreement[5], warranty deed[6] and estoppel affidavit.[7] Collectively these documents constitute a *deed-in-lieu of foreclosure* transaction.[8] The essence of this transaction is that Bank released Morrow and the guarantors from *in personam* liability for the indebtedness created by the loan agreements and in return accepted the deed to the property which stood as· security for Morrow's loan. A mortgagor's conveyance of the mortgaged property to a mortgagee in satisfaction of the secured indebtedness is a legally proper transaction. If *fair, without fraud, oppression, or unconscionable advantage,* it will be sustained.[9] The common law

---

deficiency. For further discussion see *infra* note 8.

**4.** The admission of parol evidence by the district court was harmless error in light of today's holding. *See* 12 O.S.1991 § 78; *see also Samara v. State,* Okl., 398 P.2d 89, 90–91 (1965), *cert. denied,* 381 U.S. 354, 85 S.Ct. 1556, 14 L.Ed.2d 681.

**5.** This document, dated January 7, 1987, is an agreement for the exchange of a deed to be executed by Morrow in lieu of foreclosure by the Bank. Paragraph 4 of the agreement evidences Bank's release of Morrow and the guarantors "from *any and all* recourse liability under the Promissory Note, Mortgages and Guaranty", which are the subject of this suit.

**6.** This conveyance is from Morrow to Bank and covers real property, the subject of the mortgages between Morrow and Bank. It is dated January 7, 1987.

**7.** This document was executed on January 7, 1987 by Joseph E. Morrow, the president of Morrow Development Corporation. In this document he represents under oath that Morrow had "no equity in the mortgaged Property inasmuch as the debt in favor of Grantee [Bank] exceeded the Property's fair market value." Morrow further represents that the conveyance is *absolute* and not intended as a mortgage.

**8.** For further discussion of the documentation constituting this type of transaction see John C. Murray, 26 Real Prop.Prob. & Tr.J. 459–534 (Fall 1991).

**9.** *Moore v. Beverlin,* 186 Okl. 620, 99 P.2d 886, 889 (1940); *Stallings v. Little,* 191 Okl. 399, 130 P.2d 525, 526 (1942); *Williams v. Church,* 200 Okl. 646, 198 P.2d 995, 996 (1948); *Fisk v. Kundert,* Okl., 440 P.2d 690, 694 (1968). Approval of this transaction form had its genesis in English common law as early as 1602 in Pinnel's Case, 77 Eng.Rep. 237, 5 Coke Reports 117a (1602). There the Court of Common Pleas held that acceptance of a deed in satisfaction of a debt

regards this transaction form as an *accord and satisfaction*.[10] Historically, a settlement agreement of this nature is a *bar*[11] to all subsequent actions sought to be rested upon the underlying contracts, whether sounding *ex contractu* or *ex delicto*.[12]

■ The quintessence of an *accord and satisfaction* is that, upon completed performance of the accord, there is a *discharge* of the contractual obligations spelled out in the original contract.[13] When a borrower defaults and the parties negotiate a settlement resulting in a deed-in-lieu of foreclosure, an *accord and satisfaction* arises. It operates to *bar* all subsequent causes of action for breach of *promises* set forth in the *original* loan documents,—*i.e.*, those that sound *ex contractu*.[14] We hold today that *accord and satisfaction* is the proper legal characterization of the settlement evidenced by Bank/Morrow's *deed-in-lieu of foreclosure* documents.

owed is a "good bar". *Id.* at 238. At common law there was initially a concern about the adequacy of consideration for the *deed-in-lieu agreement*. It was noted that acceptance of a lesser sum of *money* than was owed would *not* constitute a *satisfaction* of the *original* indebtedness. It is now accepted that due to the distinguishable quality of land or other material thing which would be of indeterminable value to the lender, receipt of that *res* would be *adequate consideration* to support satisfaction of the indebtedness. *See Pinnel's Case* at 237.

10. The Restatement (Second) of Contracts § 281 (1979) defines an *accord* as a promise to accept a stated performance in *satisfaction* of an existing duty. *Performance of the accord discharges the original duty. Id.* at § 281. *See also Frame v. Commissioners of Land Office*, 196 Okl. 292, 164 P.2d 865, 867 (1945); *Lilly v. Verser*, 133 Ark. 547, 203 S.W. 31, 33 (1918); *Citizens' State Bank v. Carmody*, 43 S.D. 195, 178 N.W. 578, 579 (1920); *Conklin v. Patterson*, 85 Idaho 331, 379 P.2d 428, 431 (1963); *Martino v. Frumkin*, 11 Ariz.App. 160, 462 P.2d 853, 857 (1970).

11. *Gasper v. Mayer*, 171 Okl. 457, 43 P.2d 467 (1935).

12. As the trial court has resolved in favor of the Bank all of Morrow's claims based on tort theories, we do not today reach the issue *whether an accord and satisfaction bars tort claims in the context of a deed-in-lieu of foreclosure transaction.*

## III

## UNLESS PLAINTIFF CAN EFFECTIVELY *AVOID* THE ACCORD AND SATISFACTION, IT IS BARRED FROM MAINTAINING A CAUSE OF ACTION FOR BREACH OF THE UNDERLYING CONTRACT

■ At trial Bank pled that the deed-in-lieu transaction constituted an *accord and satisfaction*.[15] The effect of an accord and satisfaction is to *discharge the contractual obligations* created by the original contracts [loan agreements]. Bank's accord-and-satisfaction defense required Morrow to plead affirmatively facts sufficient to support some legally tenable ground for *avoidance* of the binding force of its deed-in-lieu settlement with the Bank.[16] Settlement agreements are not impervious to effective and timely attacks and can be avoided under proper circumstances.[17] Here the Bank was exonerated of fraud, duress and breach of the implied covenants of good faith and fair dealing in its

13. *See Frame, supra* note 10; *Hodges v. Anderson Drilling Co.*, Okl., 465 P.2d 784, 786 (1969); *L.C. Jones Trucking Company v. Jenkins*, Okl., 313 P.2d 530, 533 (1957); *McCreery v. Day*, 119 N.Y. 1, 23 N.E. 198, 199 (1890).

14. *Jones Trucking, supra* note 13.

15. Jurisprudence requires that *accord and satisfaction* be specifically pled in order to be available as a defense. *See Jones Trucking, supra* note 13 at 532; *Frame, supra* note 10 at 866. While Bank did not specifically allege *accord and satisfaction* as a defense in its original answer, it did interpose this defense in Exhibit A, an appendage to the pretrial order. Rule 5, Rules for District Courts, 12 O.S.1991, Ch. 2, App. 1, states:

"The contents of the pretrial order shall supersede the pleadings and govern the trial of the case unless departure therefrom is permitted by the Court to prevent manifest injustice."

Bank's assertion in the pretrial order satisfies the jurisprudentially noted pleading requirement.

16. *Centric Corp. v. Morrison–Knudsen Co.*, Okl., 731 P.2d 411, 413–15 (1986); *Faulkenberry v. Kansas City Ry. Co.*, Okl., 602 P.2d 203, 205–206 (1979).

17. Grounds previously recognized for avoidance of settlement agreements include fraud, mutual mistake as to material facts, economic duress and unconscionable oppression. *See Faulkenberry, supra* note 16 at 205–207; *Centric, supra* note 16 at 417.

performance of the loan agreements, all of which exculpatory findings stand unassailed by the reviewing process that followed the *nisi prius* judgment. Under these circumstances Morrow no longer has any basis in law for avoiding the effect of the deed-in-lieu of foreclosure agreement with the Bank. Because the contractual obligations of *both* Bank and Morrow under the lending agreements were discharged by execution and performance of the deed-in-lieu settlement agreement, *Morrow's cause of action for breach of contract is barred as a matter of law.* Since the contractual obligations in suit have all been discharged, the trial court was duty-bound to enter judgment notwithstanding the verdict for Bank on Morrow's breach-of-contract claim.[18]

## V

### BANK'S REASONABLE ASSERTION OF ITS LEGITIMATE CONTRACTUAL RIGHTS UNDER THE LENDING DOCUMENTS TO PROTECT ITS ECONOMIC INTERESTS IS PRIVILEGED CONDUCT THAT AFFORDS BANK A COMPLETE DEFENSE TO THE TORT CLAIM OF INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS

■ For Gordon to recover on its claim that Bank tortiously interfered with its contractual relationship with Morrow, it would have had to prove:

1. That it had a business or contractual right with which there was interference.

2. That the interference was *malicious* and wrongful, *and* that such interfer-

ence was neither justified, *privileged* nor excusable.

3. That damage was proximately sustained as a result of the complained-of interference.[19]

*Malice,* as part of the second element of this tort, is the intentional performance of a wrongful act without justification or excuse.[20] *Privilege,* also found in the second element of proof, is defined in the RESTATEMENT (SECOND) OF TORTS § 773 (1977). It states:

"One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract ... does not interfere *improperly* with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." [21] [Emphasis added.]

Gordon rests its delictual claim against the Bank upon the premise that Bank *intentionally* engaged in a course of conduct, having as its *sole or primary purpose* depriving Gordon of the benefits of its contractual relationship with Morrow. To substantiate its claim Gordon argued that the following acts of the Bank were *wrongful:*

(1) Bank's pressing its rights under development loan agreement ¶ 7.2 to not fund advances until a sale of ten additional lots occurred;

(2) Bank's demanding under development loan agreement ¶ 7.6 additional security for its loan;

(3) Bank's threatening foreclosure and pursuance of its rights under 12 O.S.1991 § 686; and

---

18. *See Vowell v. Great American Insurance Company,* Okl., 428 P.2d 251, 253–54 (1966), for the standard to be used by a court in determining whether entering judgment notwithstanding the verdict is appropriate.

19. *Mac Adjustment, Inc. v. Property Loss Research,* Okl., 595 P.2d 427, 428 (1979); *Motive Parts Warehouse v. Facet Warehouse,* 774 F.2d 380, 390 (10th Cir.1985); *James Energy Co. v. HCG Energy Corp.,* Okl., 847 P.2d 333, 340 (1993).

20. *Facet, supra* note 19 at 390.

21. The common law has incorporated the concept of privilege as an *element* of the delict itself. *See* RESTATEMENT (SECOND) OF TORTS §§ 766, 767 (1977). Setting the parameters of *privilege* for this context, we have held that it is not unlawful for one to "interfere with the contractual relations of another if [this is done] by fair means, if [it is] accompanied by honest intent, and if [it is done] to better one's own business and not to principally harm another." *Del State Bank v. Salmon,* Okl., 548 P.2d 1024, 1027 (1976); *see also Hinson v. Cameron,* Okl., 742 P.2d 549, 551 n. 3 (1987).

(4) Bank's entering into a deed-in-lieu transaction.

On review of the Bank's course of conduct, beginning with its performance under the loan agreement of 1983 and concluding with the execution of the deed-in-lieu documents in 1987, *we find no evidence* that it was Bank's *primary intent* to interfere with the Morrow/Gordon management contract. On this record, Bank's actions evince no impropriety. Its acts were clearly intended to benefit and support the legitimate economic interests of the Bank.[22] The conclusion that Bank's acts evidenced *justifiable efforts* to protect its economic interests is supported by the jury's verdict and the court's findings exonerating the Bank of duress, fraud and breach of the covenants of good faith and fair dealing.[23] Bank's conduct is *privileged* and not *improper*. Its primary focus was *protection of Bank's legitimate economic interests and not interference with the contract subsisting between Morrow and Gordon.* As we analyze the evidence adduced before Bank moved for judgment notwithstanding the verdict, Gordon failed to prove the second of the critical elements that constitute the delict of interference with existing contractual relations. The district court should hence have entered judgment for Bank notwithstanding the verdict.

## VII

### SUMMARY

Upon review of the record considered in light of the *settled-law-of-the-case* doctrine, the executed *accord and satisfaction* agreement between Morrow and Bank stands unassailed and is now unassailable as final. Since there was no legal justification for avoiding the binding effect of the Morrow/Bank settlement agreement, no cause of action can lie for the breach of any promises effectively discharged by the Morrow/Bank settlement. When, as here, the reasonable acts of the Bank in protecting its own legitimate, economic interests are considered in the context of the settled law of the case, *the*

Bank's conduct clearly falls under the rubric of privilege.* It affords a complete defense to Gordon's delictual claim of interference.

**ON CERTIORARI PREVIOUSLY GRANTED, THE OPINION OF THE COURT OF APPEALS IS VACATED, THE JUDGMENT OF THE TRIAL COURT IS REVERSED IN PART AND THE CAUSE REMANDED WITH DIRECTIONS TO ENTER JUDGMENT FOR DEFENDANT–BANK NOTWITHSTANDING THE VERDICT IN ACCORDANCE WITH TODAY'S PRONOUNCEMENT.**

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, SUMMERS and WATT, JJ., concur.

SIMMS and KAUGER, JJ., concur in result.

ALMA WILSON, J., dissents.

injure the right of Morrow to receive the benefits of their [Morrow and Bank] agreement. *See Hinson, supra* note 21 at 553.

---

**22.** *See Del State Bank, supra* note 21 at 1027.

**23.** By finding that the Bank had not violated the implied covenant of good faith, the *nisi prius* court ruled Bank had done nothing that would