**GREEN BAY PACKAGING, INC., Appellant,**

v.

**PREFERRED PACKAGING, INC., Mark Alan Wojciehowski, and Terry Jenkins, Appellees.**

No. 83343.

Supreme Court of Oklahoma.

Oct. 29, 1996.

As Corrected Nov. 18 and Dec. 11, 1996.

Anton J. Rupert, Crowe & Dunlevey, Oklahoma City, Allen B. Mitchell, Sapulpa, for Appellant.

W.C. Sellers, W.C. Sellers, Jr., Tom C. Lane, Sr., Sapulpa, Mike Jones, Bristow, for Appellees Preferred Packaging, Inc. and Terry Jenkins.

James W. Keeley, Gill & Keeley, Tulsa, for Appellee Mark Alan Wojciehowski.

Brad Smith, Tulsa, for all Appellees.

HODGES, Justice.

This matter concerns review of the trial court's judgment on a jury verdict in favor of Appellees on counterclaims for unpaid wages, interference with business relations, and defamation. It raises several fact-specific issues concerning the jury's verdict and the attorney fees awarded by the trial court.

Appellees Terry Jenkins and Mark Wojciehowski were employees of a corrugated cardboard box manufacturer at a facility in Creek County, Oklahoma. The company was incorporated in 1972 under the name South West Packaging, Inc. (South West). The corporation's three directors developed an impressive sales staff that provided the company with gross sales of about twenty million dollars per year by 1986.

South West's approach to sales seems to have reflected an attitude of letting the sales staff service their accounts as the staff saw fit with minimal interference from management. In fact, some of the salesman were allowed to form their own companies to provide products related to the corrugated box industry. At least one salesman actually manufactured boxes and split the profits with his employer. The main emphasis of South West's approach to sales was "the customer is King." The sales staff was urged to become like family to the customer. With this sales philosophy, South West saw its sales grow steadily and substantially over the years.

Terry Jenkins was one of the original sales staff who began working for South West in 1972. He was promoted to sales manager in 1981. In 1986, he became vice president for sales and marketing. Jenkins had hoped to one day run the facility.

Mark Wojciehowski began working as a salesman for South West in 1980. By 1987, he had several regular accounts. He also had an outside interest in his own company, Wojo Enterprises, through which he brokered boxes. South West knew of the venture and had no problem with it.

In January, 1987, South West announced that it had been purchased by Green Bay Packaging, Inc. (Green Bay), a Wisconsin corporation. In reality, the two companies had merged. South West had always been a wholly owned subsidiary of Green Bay. This fact was not known to South West's customers, employees, or the public in general.

When Jenkins learned that Green Bay was taking over operations of the Creek County facility, he saw an opportunity to become a national accounts manager for Green Bay. His plan was for Green Bay to service the glass industry nationwide as South West had serviced the local glass industry. Jenkins submitted a proposal to his new boss in Wisconsin but that plan was set aside and never acted upon.

At this point, the facts become disputed. Jenkins testified that he decided to pay for some accounting projections in August, 1987, for a "high speed, super sheet plant" to manufacture boxes. He would split the profits evenly with Green Bay. He also testified that he never went forward with the plan

because it would have required one and one half million dollars in capital to do so. Later, Green Bay contended that these projections were actually a plan Jenkins made to form Preferred while he was still an employee of Green Bay.

By October, 1987, things had changed dramatically at the Creek County facility. Some management decisions were no longer made locally. Green Bay began to lose sales staff at the facility. Jenkins testified that he saw no future with Green Bay and decided to move on. He tendered his resignation on October 23, 1987, effective November 25th of that year.

Jenkins formed Preferred Packing, Inc. (Preferred), in February, 1988, with one $60,-000.00 investor. Jenkins was Preferred's president. He held 51 per cent of Preferred's stock and the investor held the other 49 per cent.

Wojciehowski remained at Green Bay until November, 1988. He then began brokering boxes through Preferred. He was not, however, one of Preferred's employees.

When Wojciehowski left Green Bay it withheld approximately $10,000.00 in commissions he had earned. Green Bay claimed he had falsified invoices to increase his commissions. Green Bay also claimed that Wojciehowski had taken certain cutting and printing dies used to manufacture boxes.

In June, 1989, Green Bay filed this lawsuit. It brought claims for damages against Jenkins, Wojciehowski, and Preferred for conversion, fraud, interference with business relations, conspiracy, and misappropriation of trade secrets and proprietary information. In doing so, Green Bay alleged a conspiracy by which Wojciehowski would take certain cutting and printing dies. Jenkins and Preferred would then use them to manufacture boxes to be sold to Green Bay's current and former customers. Green Bay also claimed that the defendants had misappropriated trade secrets and proprietary information it owned. In addition, Green bay alleged that Jenkins had cheated on expense reports while at Green Bay and that Wojciehowski had falsified invoices to raise his rate of commissions. Green Bay sought actual and punitive damages.

Jenkins, Wojciehowski and Preferred brought separate counterclaims against Green Bay for fraud, failure to pay wages, conversion, defamation, interference with business relations, and intentional infliction of emotional distress. They urged that Green Bay was engaged in a smear campaign designed to drive them out of business. They too sought actual and punitive damages.

It took four and one half years for this case to come to trial. Preferred had enjoyed sales of $2.5 million in 1988, and $6.1 million in 1989. But by April, 1991, Preferred's economic situation was such that it was forced to cease manufacturing and remain a marketing and distribution center. At the time of trial, in January, 1994, neither Jenkins nor his investor owned any interest in Preferred.

The jury trial of this case took ten days. The jury found against Green Bay on every theory it had asserted against the defendants. But the jury found for the defendants on some of the counterclaim theories they had asserted against Green Bay. The trial court entered judgment on the jury's verdict for Wojciehowski in the amount of $10,000.00 on his claim for unpaid wages. Judgment was also entered on the jury's verdict for Jenkins in the amount of $1.5 million actual damages and $1.5 million punitive damages on his claim for interference with business relations. Those same amounts were entered for Jenkins on his defamation claim. Thus, the jury's total award to Jenkins was $6 million.

Following a hearing, the trial court awarded attorney fees to Wojciehowski, in the amount of $103,200.00. Jenkins received a total fee award of $912,000.00.

The Court of Appeals reversed finding no competent evidence to support the jury's verdict. It also reversed portions of the attorney fee awards. This Court granted certiorari review of that decision. The Court of Appeals opinion in this matter is vacated and the issues raised on certiorari will now be addressed.

### I. Filing of lawsuit as evidence of interference with business relationships

Green Bay asserts error in the trial court's refusal to instruct the jury that the filing of this lawsuit was absolutely privileged as to Appellees' counterclaims for interference with their business relationships. As a result, the jury was permitted to consider the filing of the suit as evidence of interference. Green Bay argues that the interference counterclaim was thus transformed into a premature malicious prosecution action. It notes that a malicious prosecution action cannot be maintained before termination of the "malicious" suit in favor of one defending it.

The appropriateness of the trial court's refusal to instruct the jury on "absolute privilege" depends on whether such a privilege applies to an interference with business relations theory. Thus, the issue presents a question of law for this Court's determination.

■■■ Appellees cite *Morrow Development Corp. v. American Bank & Trust Co.,* 875 P.2d 411 (Okla.1994), as authority that there is only a qualified privilege to bring a lawsuit against a competitor. *Morrow* involved interference with contractual relations. There, this Court recited the elements of a cause of action for malicious interference with contract or business relations. In order to recover a plaintiff must prove:

1. That it had a business or contractual right with which there was interference.
2. That the interference was malicious and wrongful, *and* that such interference was neither justified, *privileged* nor excusable.
3. That damage was proximately sustained as a result of the complained-of interference.

*Id.* at 416 (footnote omitted). *See also Mac Adjustment, Inc. v. Property Loss Research,* 595 P.2d 427, 428 (Okla.1979). *Morrow* held that an actor's course of conduct is privileged only if its "primary focus" was protection of the actor's legitimate economic interests rather than interference. 875 P.2d at 417. Thus, the privilege described in *Morrow* and other interference cases is not absolute. It

can be lost when the underlying motive is principally to harm another.

■■ In the present dispute, Appellees presented evidence that the filing of the petition was part of an effort whose underlying motive was to put Jenkins and his company out of business. The trial court gave the following instruction concerning whether the parties acted properly:

The determination of whether a Party's conduct was or was not improper depends upon your consideration of all the facts and circumstances of the case, and a balancing of the following factors:

1. The nature of the Party's conduct;
2. The Party's motives;
3. The interests of the Party with which another party's conduct interfered;
4. The interests sought to be advanced by a Party;
5. The social interests in protecting the freedom of action of a Party and the contractual interests of the Parties;
6. The proximity or remoteness of a Parties [sic] conduct to the interference claimed by a party; and,
7. The relationship among the Parties and the entity or entities which have a relationship with the Parties.

This instruction adequately directed the jury in determining whether Green Bay's conduct improperly interfered with Jenkins' business relations or whether Green Bay was honestly exercising its privilege to protect its legitimate economic interests.

In finding for Jenkins, the jury apparently believed his evidence that Green Bay had waged a systematic attack on him which included the filing of this suit. The trial court did not err by admitting such evidence.

### II. Evidence of Interference

Green Bay next asserts that there was no evidence to support the jury's verdict in favor of Jenkins on his interference counterclaim. It claims that any evidence of interference concerned Preferred, not Jenkins.

■■■ A jury verdict will not be reversed unless an examination of the record demon-

strates there in *no* evidence reasonably tending to support it. *Silk v. Phillips Petroleum Co.,* 760 P.2d 174, 176 (Okla.1988). Jenkins presented evidence of lost sales and lost accounts resulting from the actions of Green Bay management and its employees. The Court of Appeals concluded that those losses were somehow Preferred's alone and not in any way those of Jenkins who was the majority owner and who ran Preferred. That conclusion is not supported by law, logic, or the record on appeal.

A review of the record reveals evidence from which the jury easily could have inferred damages to Jenkins personally. Several businesses who were his customers at Green Bay followed Jenkins to Preferred. The damage caused to business relations with these customers were Jenkins' personally, not just Preferred's. The loss of a customer meant a reduction in Jenkins' career potential and future income.

There is no basis for concluding that Jenkins suffered no damage to his own business relations. Because the verdict was based on competent evidence, it will not be disturbed on appeal.

### III. Defamation Theory of Liability

Testimony was presented at trial concerning statements of Green Bay management and employees. The testimony related statements that Jenkins and his company were on the edge of business ruin and statements which implied that Jenkins could not be trusted to deliver on orders.

Green Bay asserts the statements merely expressed opinion and were not defamatory. That issue, however, need not be addressed because the statements were also the basis of Jenkins' interference claim against Green Bay. In addition, the same evidence was presented to establish damages without regard to whether the damages were caused by interference or by defamation.

■ "Only a single cause of action can be predicated on the same set of facts, but different remedies and theories of liability may be presented in support of each claim alleged." *Fleet v. Sanguine, Ltd.,* 854 P.2d 892, 901 (Okla.1993). Jenkins asserted only one cause of action based on statements made by Green Bay management and employees. He pressed that cause of action under alternative theories of intentional infliction of emotional distress, interference with business relations, and defamation.

Jenkins' defamation claim was an alternative theory of relief, not a separate cause of action. Thus, he was entitled to a damage award for one cause of action, not two. Jenkins' award of damages on his defamation claim is reversed. On remand, the trial court is directed to enter judgment for Jenkins only on his interference claim in the amount of $1.5 million actual damages and $1.5 million punitive damages.[1]

### IV. Attorney Fees

■ Green Bay challenged several aspects of the trial court's award of attorney fees. An award of attorney fees is within the discretion of the trial court and will not be disturbed absent abuse of that discretion. *See Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.,* 737 P.2d 1186, 1189 (Okla.1987); *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659, 663 (Okla. 1979). "To reverse a trial court under abuse of discretion, it must be found that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." *Broadwater v. Courtney,* 809 P.2d 1310, 1312 (Okla.1991).

#### A. *Wojciehowski's Attorney Fees*

■ The trial court awarded attorney fees to Wojciehowski in the amount of $103,-200.00. This was calculated by taking his

1. Green Bay has not assailed, either on appeal or on certiorari, the assessed amount of the punitive-damages award as "grossly excessive" punishment when measured by the Due Process Clause of the United States Constitution, Amendment XIV. We hence need not, and do not, discuss the impact of *BMW of North America, Inc. v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); *Honda Motor Co. v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336, (1994); *TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366, (1993); or of *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1, (1991), on the correctness of the punitive-damages award in this case.

lawyer's hourly rate of $125.00 and multiplying it by 825.6 hours expended in successfully defending Green Bay's claims against Wojciehowski and in successfully prosecuting Wojciehowski's counterclaim for wages. Detailed time sheets were submitted to document the efforts expended.

Prevailing party attorney fees for a wage claim are authorized by section 165.9(B) of title 40 which provides that, in an action by an employee to recover unpaid wages, the court "may, in addition to any judgment awarded to the plaintiff or plaintiffs, defendant or defendants, allow costs of the action, including costs or fees of any nature, and reasonable attorney's fees." The jury awarded Wojciehowski the $10,000.00 he sought in unpaid wages. This brought him within the ambit of the attorney fee provision.

Green Bay argues the attorney fee of $103,200.00 is excessive for a $10,000.00 wage claim. It claims the excessive fee resulted because the trial court failed to apportion attorney fees between the wage claim, for which attorney fees are recoverable, and the defense of the claims asserted against Wojciehowski. Green Bay has failed to recognize, however, that the claims brought against Wojciehowski operated as offsets claimed against the wages owed to him.

Section 165.3(A) of title 40 requires that, when employment terminates, an employee is to be paid wages owed less offsets. Green Bay never disputed that Wojciehowski had accrued $10,000.00 in wages which had not been paid. Rather, it claimed that the wages had been withheld because Wojciehowski had taken property of Green Bay in the form of trade secrets, proprietary information, and commission money. Further, Green Bay alleged that Wojciehowski had conspired with Jenkins to interfere with Green Bay's business relations in breach of his duty of loyalty to Green Bay. Because these theories functioned as claimed offsets to the wages Green Bay admittedly owed Wojciehowski, they became issues in the wage claim. The trial judge acted within his discretion in treating them as such and awarding attorney fees under section 165.9(B).

Green Bay also argues, however, that the attorney fee award to Wojciehowski included fees for the unsuccessful prosecution of Wojciehowski's counterclaim theories of interference with his business relations and defamation. Green Bay wants the award of attorney fees to be reduced by the amount of the fees attributable to the unsuccessful prosecution of these theories.

Wojciehowski's judgment was based on a wage claim theory and accompanying offset theories for which attorney fees may be granted by statute. But he also brought interference with business relations and defamation theories for which there is no statutory authority for an award of attorney fees. Under such circumstances, the trial court should have reduced the award by the amount attributable to Wojciehowski's unsuccessful counterclaim theories. The trial court is directed to do so on remand.

### B. *Jenkins' Attorney Fees*

The trial court awarded Jenkins and Preferred attorney fees for the cost of defending against the theories asserted by Green Bay. That award was based on two statutory provisions.

First, the trial court relied on section 89 of title 78 of the Oklahoma Statutes which provides that "[t]he court may award reasonable attorney's fees to the prevailing party if: 1. A claim of misappropriation [of trade secrets] is made in bad faith." The trial court determined that Green Bay's allegations of misappropriation were made in bad faith. Green Bay argues that its claim survives a "bad faith" analysis because the claim reached the jury over a demurrer to the evidence. It maintains that a *prima facie* case was presented even though Green Bay did not prevail on its claim.

This Court has never construed the term "bad faith" in the context of a trade secret prevailing party. But the term has been construed in other contexts. For example, section 103 of title 23 of the Oklahoma statutes provides for an award of attorney fees when a personal injury action is brought in bad faith. There, this Court has looked to the reasons a claim is made. It has found

bad faith when the claim was made for "oppressive, abusive or wasteful" reasons. *Beard v. Richards,* 820 P.2d 812, 816 (Okla. 1991).

■ Bad faith involves the intent of the actor who brought the claim. It does not involve the quality or the quantity of the evidence presented. The record contains evidence that Green Bay's intent in bringing the claim of misappropriation of trade secrets was to drive Jenkins and Preferred out of business. Under such circumstances, the trial court was correct in awarding attorney fees.

■ As a second statutory basis for the award of attorney fees, the trial court applied section 165.9(B) of title 40. Green Bay had claimed Jenkins cheated on expense reports while he worked there. It included a claim to recover monies it had paid Jenkins to reimburse him for expenses. The trial court determined that Green Bay's attempt to recover expense monies paid to Jenkins was in the nature of a wage claim. Because the jury refused to award Green Bay the monies sought, the trial court awarded Jenkins attorney fees and costs as provided by the statute. Green Bay now challenges this basis for awarding attorney fees.

Section 165.1(4) of title 40 defines wages as:

> compensation owed by an employer to an employee for labor or services rendered, including salaries, commissions, holiday and vacation pay, overtime pay, severance or dismissal pay, bonuses and other similar advantages agreed upon between the employer and the employee, which are earned and due, or *provided by the employer to his employees in an established policy,* whether the amount is determined on a time, task, piece, commission or other basis of calculation.

(emphasis added). Green Bay's policy of compensating employees for legitimate business expenses brings Jenkins' expense payments within the definition of wages. Nevertheless, Green Bay contends that, although Jenkins successfully defended Green Bay's claim, attorney fees are not available because the claim was brought by an *employer* to

recover wages paid rather than "by an employee to recover unpaid wages" as stated in section 165.9(A).

Although the statute contemplates the usual situation where an employee brings an action for wages against an employer, Green Bay's attempt to recover wages already paid to Jenkins was an action to determine the proper amount of compensation that should have been paid to its employee. As such, it comes under section 165.9(B) which authorizes an award of costs and attorney fees. The trial court did not abuse its discretion in so holding.

Taken together, the "bad faith" and the "wage claim" authorizations of an award for attorney fees and costs cover the defense of all the claims Green Bay brought against Jenkins and Preferred. The only question remaining is whether the fees awarded were reasonable.

The total attorney fee award of $912,000.00 was in two portions. The first portion was $312,000.00 awarded for representation by George Phillips prior to a contingency fee arrangement with Bill Sellers' office. The $312,000.00 represented 80 per cent of the fees Jenkins and Preferred had actually paid. Phillips testified that 80 per cent of his time had been occupied solely in the defense of claims Green Bay had made against Jenkins and Preferred. Detailed time sheets were submitted to support the award.

The remaining $600,000.00 portion of the award represented ten per cent of the six million dollar judgment in favor of Jenkins as provided by the contingent fee arrangement with Bill Sellers' law firm. That agreement apportioned ten per cent of any recovery to the cost of defending the action brought by Green Bay. Green Bay asserts that the trial court abdicated its responsibility to determine whether the fee was reasonable and that the trial court merely "blessed" the fee agreement.

■ "The presence of a contingency fee arrangement is a matter between the client and his attorney and is not binding on the court in awarding an appropriate attorney fee." *Wise v. Johnson Controls, Inc.,* 784 P.2d 86 (Okla.Ct.App.1989). Lawyers

seeking an award of attorney fees are required to "present detailed time records to the court and to offer evidence of the reasonable value for the services performed, predicated on the standards within the local legal community." *Oliver's Sports Center v. National Standard Ins. Co.,* 615 P.2d 291, 295 (Okla.1980).

The time records submitted to the trial court indicate that 1,602 hours were expended on this litigation by the Sellers law firm from 1992 through the trial. The hours expended multiplied by the hourly rates of the lawyers involved totals an amount far below the $600,000.00 fee awarded. Under such circumstances, the trial court must specifically state the basis for its determination that the fee was reasonable. The trial court must revisit the issue of the reasonableness of that fee, applying the criteria delineated in *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659, 661 (Okla.1979).

### V. Conclusion

In summary, the trial court did not err in refusing to instruct the jury that an absolute privilege applied to Jenkins' theory of interference with business relations. There is only a qualified privilege based on proper underlying motive. Jenkins' award of damages on his defamation claim is reversed and the trial court is directed to enter judgment only on his interference claim. Finally, the trial court's attorney fee award to Wojciehowski is reversed and that issue is remanded for the trial court to reduce the award by the amount attributable to Wojciehowski's unsuccessful claims of interference with business relations and defamation. The $600,-000.00 award to Jenkins is also reversed and the issue is remanded for the trial court to reexamine the reasonableness of that fee.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF APPEALS VACATED; JUDGMENT OF TRIAL COURT AFFIRMED IN PART, REVERSED IN PART; CAUSE REMANDED WITH DIRECTIONS.

ALMA WILSON, C.J., and OPALA, SUMMERS and WATT, JJ., concur.

LAVENDER, SIMMS and HARGRAVE, JJ., concur in part; dissent in part.

KAUGER, V.C.J., recused.