Mary Ellen ZUBA

v.

**PAWTUCKET CREDIT UNION et al.**

**No. 2007–52–Appeal.**

Supreme Court of Rhode Island.

Feb. 6, 2008.

J. Ronald Fishbein, Esq., Providence, for Plaintiff.

Frederick E. Connelly, Esq., Boston, MA, for Defendant.

Present: WILLIAMS, C.J., FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This is an appeal by the plaintiff, Mary Ellen Zuba, from the Superior Court's grant of the defendants' motion for summary judgment. This case came before the Supreme Court on December 4, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the memoranda that the parties submitted and the relevant principles of law,[1] we are satisfied that cause has not been shown. Accordingly we shall decide the appeal at this time. For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts and Travel

In September of 1990, Mrs. Zuba and her husband, Walter Zuba, purchased a parcel of real estate and the building located thereon in Attleboro, Massachusetts (the Attleboro property) for the sum of $190,000. The Zubas purchased the property from Pawtucket Credit Union (Credit Union) and financed the purchase with a Credit Union mortgage. In her eventual legal action, plaintiff contended that defendants had misrepresented to her husband and her[2] that the property had a rental income of $700 per month. Mrs. Zuba asserted that the actual rental income of the property was instead $450 per month. Furthermore, she alleged that defendants had misrepresented the value of the property as being $190,000, when in actuality it was only worth $150,000.

After encountering financial difficulties, the Zubas decided to convey the property back to the Credit Union in exchange for forgiveness by that entity of the outstanding debt which they owed the Credit Union on the property. The transaction was structured as a Deed in Lieu of Foreclosure and was executed by the Zubas in consideration of the forgiveness of their mortgage indebtedness, which was in the amount of $197,201.76. On August 30, 1991, the Zubas executed an affidavit stating that the Deed in Lieu of Foreclosure operated as an absolute conveyance of the property and that the consideration repre-

---

1. Due to the fact that plaintiff's attorney chose not to appear before this Court on December 4 as directed (and chose not to give notice to the Court that he would not be present), no oral argument was held with respect to this case. Although we deplore the attorney's conduct in this regard, our negative view of that conduct has not affected our analysis of the issues presented.

2. Strictly speaking, Mrs. Zuba alleged that agents of the Credit Union had made virtually all the alleged misrepresentations to her husband, who then relayed those misrepresentations to her.

 The defendants contend that Mr. Zuba did not join his wife as a plaintiff in the present action because, when he filed for bankruptcy approximately ten years ago, he did not include the instant claims as among the assets of his bankruptcy estate.

sented "the fair value of the property * * *."

Mrs. Zuba commenced the instant action on October 20, 1998; the very next day, she filed a first amended complaint. That first amended complaint named as defendants the Credit Union, Robert Andrade, Paul Cappello, and John T. Gannon;[3] in that pleading, Mrs. Zuba alleged that defendants had acted fraudulently by making the above-referenced purported misrepresentations, and she further alleged that they had breached a fiduciary duty that she said they owed her.

The defendants filed a motion for summary judgment on August 2, 2006.[4] A hearing on defendants' motion for summary judgment was held on October 3, 2006. At that hearing, defense counsel articulated a number of arguments in support of the motion for summary judgment. First, he argued that plaintiff had not submitted any evidence of damages caused by the alleged misrepresentations; he stated that the only damages that might be recoverable would relate to an alleged misrepresentation regarding the appliances in the building on the property, and he noted that plaintiff had not made reference to such possible damages in either her complaint or her amended complaint. Secondly, defense counsel argued that the original contract was rescinded when plaintiff and her husband executed the Deed in Lieu of Foreclosure, and that plaintiff was therefore precluded from pursuing an action for fraud with respect to the inducement to that original contract. Thirdly, defense counsel pointed to the fact that, in an affidavit that she filed in conjunction with the Deed in Lieu of Foreclosure, plaintiff acknowledged that the fair market value of the real estate was $197,201.76.[5]

Plaintiff's counsel argued that there was no evidence showing that there had been a rescission. He suggested that, on the issue of damages, the deposition of Mr. Zuba indicated that damages for appliances, totaling $3,000, and damages for repairs, totaling $3,200, resulted from defendants' misrepresentations.

The hearing justice granted defendants' motion for summary judgment, indicating that plaintiff had failed to point to any evidence to demonstrate that the essential elements of her claims were satisfied. On the issue of whether the Credit Union, as a lender, owed a fiduciary duty to plaintiff, as a borrower, the hearing justice remarked that "there are obviously some duties between a borrower and a lender * * *." However, he then observed that, with respect to this case, "plaintiff is contending * * * that this lender had a fiduciary obligation to protect [her] from paying too much for a piece of property." He concluded that the circumstances did not give rise to a fiduciary duty "on the level that's being claimed here." The hearing

---

**3.** Robert Andrade and Paul Cappello were agents or employees of the Credit Union. On February 1, 1999, all claims against John T. Gannon were dismissed.

**4.** According to defense counsel, the case was on inactive status for a number of years before being reactivated by plaintiff's counsel; plaintiff's counsel has not indicated that such characterization is inaccurate.

**5.** Defense counsel also argued: (1) that plaintiff's case was fatally flawed because it would necessarily implicate statements made to her by her husband and (2) that those statements would be inadmissible under G.L.1956 § 9–17–13 (spousal communications). (It will be recalled that virtually all of the alleged misrepresentations were not made directly to Mrs. Zuba, but rather to her husband, who then relayed them to her.) Since we are deciding this case on other grounds, we need not address this rather unusual evidentiary argument. *See also* footnote 6, *infra.*

justice thereafter proceeded to address the following remarks to plaintiff's counsel:

"The question is whether or not your client has come forward with some evidence to demonstrate duty triggering facts, and even assuming there was a duty, whether or not she's come forward with evidence to demonstrate the essential elements of the claim including recoverable damages. * * * But, when it's all pulled apart and broken down, you have one element of one claim, another element of another claim and nothing matches up."

On the basis of these and other determinations, the hearing justice granted defendants' motion for summary judgment.

Mrs. Zuba has appealed from the entry of summary judgment, alleging that defendants failed to point to evidence tending to show that the Deed in Lieu of Foreclosure constituted a rescission and that the issue of whether or not a rescission has occurred is a question of fact that renders summary judgment inappropriate. Mrs. Zuba also argues that nominal damages could and should be awarded to her.[6]

The defendants respond that the Deed in Lieu of Foreclosure constituted a new agreement and that that new agreement, combined with the accompanying affidavit that the plaintiff executed regarding the fair market value of the property, demonstrate that there was an accord and satisfaction with respect to any claims that plaintiff might have had stemming from the alleged fraudulent inducement. The defendants also argue that that same Deed in Lieu of Foreclosure constituted a rescission of the original contract. In addition, they contend that any alleged misrepre-

sentations were non-actionable opinions and that, furthermore, plaintiff offered no evidence to support her allegation of breach of a fiduciary duty.

## Standard of Review

In examining a grant of summary judgment by the Superior Court, this Court engages in a *de novo* review, and we apply the same criteria as did the hearing justice. *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I.2006); *see also Kevorkian v. Glass*, 913 A.2d 1043, 1047 (R.I.2007). After examining the pleadings, memoranda, affidavits and record in a light most favorable to the nonmoving party, we then decide whether a genuine issue of material fact exists. *See Urena v. Theta Products, Inc.*, 899 A.2d 449, 452 (R.I.2006). If there are no issues of material fact and the movant is entitled to judgment as a matter of law, we will uphold an entry of summary judgment. *Lacey v. Reitsma*, 899 A.2d 455, 457 (R.I.2006).

## Analysis

In dealing with the concepts of rescission and of accord and satisfaction, both of which concepts defendants contend bar plaintiff's claims in this case, this Court looks more to the substance of the transaction than to its form. *See Weaver v. American Power Conversion Corp.*, 863 A.2d 193, 198 (R.I.2004). As we stated in *Salo Landscape & Construction Co. v. Liberty Electric Co.*, 119 R.I. 269, 273, 376 A.2d 1379, 1382 (1977):

"[I]t matters not whether we refer to this transaction as an accord and satisfaction or as a rescission followed by the formation of a new contract; the signifi-

---

**6.** Contending that defendants could not properly base an argument on the spousal privilege statute due to their lack of standing and due to the doctrine of waiver, plaintiff also urged the hearing justice not to accept that particular argument of defendants. Because we are not reaching that issue in our decision, we need not address plaintiff's contentions with respect to same.

cant and essential element in either instance under the substituted contract theory is a factual determination that the original contractual rights and obligations of both parties were extinguished and new contractual rights and liabilities created for each, all by their mutual agreement."

This Court has embraced such a substantive approach in analyzing cases arising in this area of the law—an area which the First Circuit has described as "this fuliginous corner of the law." *In re Newport Plaza Associates, L.P.*, 985 F.2d 640, 644 (1st Cir.1993). We therefore shall proceed to analyze the transaction before us in terms of its substance rather than anguishing over its nomenclature, choosing "practicality over pettifoggery." *Id.*

In this case, the most significant document to be considered is the document entitled "Deed in Lieu of Foreclosure,"[7] which was executed on August 30, 1991. In that document, plaintiff and her husband explicitly deeded the Attleboro property to the Credit Union in consideration of the Credit Union's forgiveness of the indebtedness that the mortgage had secured, including credit that the Credit Union had granted the Zubas, the total amount being $197,201.76. By its express terms, the Deed in Lieu of Foreclosure constituted "an absolute conveyance, the Grantors [plaintiff and her husband] having sold the land described therein to the Grantee [the Credit Union] for a fair and adequate consideration, such consideration

being the forgiveness of indebtedness * * *." The affidavit that plaintiff and her husband executed on that same day expressly indicated that the signatories considered the sum of $197,201.76 to be the "fair value of the property * * *."

Pursuant to the transaction that the Zubas and the Credit Union entered into, the Credit Union released the Zubas from their debt under the original loan contract in exchange for the deed to the property that had secured the loan. The defendants assert in this appeal that that transaction, as embodied in the Deed in Lieu of Foreclosure, operated to extinguish Mrs. Zuba's claims under the original contract, whether pursuant to a theory of rescission or of accord and satisfaction. We agree.

■ Under the common law principle of accord and satisfaction, which has been defined as "[a]n agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance,"[8] the contractual obligations delineated in the original contract are discharged. *See Weaver*, 863 A.2d at 197. We have stated that the principle of accord and satisfaction "provides that when two parties agree to give and accept something in satisfaction of a right of action which one has against the other, and that agreement is performed, the right of action is subsequently extinguished." *ADP Marshall, Inc. v. Brown University*, 784 A.2d 309, 313 (R.I.2001); *see also*

7. The type of transaction that is at issue in this case originated in English common law as early as 1602. *See Morrow Development Corp. v. American Bank and Trust Co.*, 875 P.2d 411, 414–15 n. 9 (Okla.1994) (citing *Pinnel's Case*, (1602) 77 Eng. Rep. 237 (C.P.D.)). At that time, England's Court of Common Pleas held that the acceptance of a deed in satisfaction of a debt owed is a "good bar" and that consideration in such a transaction

is sufficient to support satisfaction of a borrower's indebtedness. *See id.*

8. The quoted definitional language is from Black's Law Dictionary 17 (8th ed.2004). That same definition appeared in the immediately preceding edition of Black's Law Dictionary, and we quoted that definition with approval in *Weaver v. American Power Conversion Corp.*, 863 A.2d 193, 197 (R.I.2004).

*Soares v. Langlois,* 934 A.2d 806, 810 (R.I. 2007).

 In this case, the Deed in Lieu of Foreclosure, which the Credit Union and the Zubas executed essentially for the purpose of canceling the mortgage, constituted an accord and satisfaction. In a quite similar circumstance, the Supreme Court of Oklahoma aptly observed:

> "When * * * parties negotiate a settlement resulting in a deed-in-lieu of foreclosure, an *accord and satisfaction* arises. It operates to *bar* all subsequent causes of action for breach of *promises* set forth in the *original* loan documents,—*i.e.*, those that sound *ex contractu.*" *Morrow Development Corp. v. American Bank and Trust Co.,* 875 P.2d 411, 415 (Okla.1994).

That logic applies to the case before us. The Deed in Lieu of Foreclosure satisfied the Credit Union's claims against plaintiff for the amount she owed on the original contract, and it also served to bar any causes of action that plaintiff might have possessed with respect to that original contract. Under the principle of accord and satisfaction, any claims plaintiff might have had under the original contract were extinguished by her execution of the replacement contract.[9]

 Although we have already indicated that nomenclature is usually of little importance in this particular area of the law, it should nonetheless be noted that the same result obtains in this case under *both*

the concept of rescission *and* the concept of accord and satisfaction. We have previously stated that "[r]escission of a contract is a bilateral action in which both parties seek to create a situation as if no contract existed." *McFarland v. Brier,* 850 A.2d 965, 972 (R.I.2004) (internal quotation marks omitted). Professor Farnsworth describes rescission as the process whereby parties to a bilateral contract "that is at least partly unperformed on each side * * * agree to a discharge of all remaining duties of performance on both sides." 1 E. Allen Farnsworth, *Farnsworth on Contracts,* § 4.24 at 550 (3rd ed.2004). The document that the parties executed in this case, when the Zubas encountered financial difficulties and sought to undo the transaction that they had originally entered into in order to finance their purchase of the Attleboro property, effectively accomplished that goal. Accordingly, a separate and independent conceptual basis for upholding the decision of the hearing justice is that the Deed in Lieu of Foreclosure constituted a rescission of the original agreement.[10]

Designated a Deed in Lieu of Foreclosure, the document, by its very title, represents "[t]he surrender of rights under the original agreement by each party [as] the consideration for the mutual agreement of rescission." John D: Calamari and Joseph M. Perillo, *The Law of Contracts,* § 21.2 at 796 (4th ed.1998). Under the original contract, the Credit Union certainly possessed the right to foreclose on the property in

---

9. It is also worth noting that the principle of accord and satisfaction does not require that a plaintiff be made whole. *See, e.g., Weaver,* 863 A.2d at 199–200. In *Weaver,* we held that a former employee's acceptance of a substitute stock option offering, although it did not make him whole, constituted an accord and satisfaction and precluded further recovery by him from his former employer. *Id.* at 199–201.

10. The plaintiff has argued that whether or not there has been a rescission is an issue of fact and is inappropriate for resolution pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. Regardless of what might obtain in another case, it is utterly clear to us in this case that disposition pursuant to Rule 56 was entirely appropriate. *See generally Peckham v. Continental Casualty Insurance Co.,* 895 F.2d 830, 836–37 (1st Cir.1990).

the event that the Zubas failed to make their payments. When the borrowers faced financial trouble, the Credit Union entered into negotiations with them in the hope of arriving at a resolution of the predicament. The solution at which the parties arrived, as embodied in the Deed in Lieu of Foreclosure, served to extinguish both the Credit Union's right to foreclose and also the Zubas' rights under the original contract; that was accomplished by the Zubas' deeding the property to the Credit Union in exchange for its forgiveness of the borrowers' indebtedness. The rescinding effect of the document indicates to us that any claims Mrs. Zuba might have possessed against defendants with respect to the formation of the original agreement—as to each of which claims, we note, the hearing justice ruled that Mrs. Zuba had failed to state a *prima facie* case—would have been extinguished by the parties' execution of the Deed in Lieu of Foreclosure.[11]

Inasmuch as the misrepresentation and breach of fiduciary duty claims centered entirely around an alleged fraudulent inducement pursuant to which plaintiff and her husband contracted to purchase the subject property in 1990, it is our view that those claims (even though they sound in tort) were extinguished at the moment that the accord and satisfaction or rescission with respect to the original contract was consummated. There are undoubted-ly instances where the application of the principle of accord and satisfaction or of rescission in a contractual context would not extinguish certain accompanying tort claims that have some relation to the contractual claims; but, with respect to the tort claims in this case, we have no doubt that they were extinguished.

## Conclusion

Having carefully scrutinized the substance of the Deed in Lieu of Foreclosure transaction between the plaintiff and the Credit Union, which was carried out in order to contend with the Zubas' financial difficulties, we conclude that no genuine issue of material fact exists with respect to the plaintiff's claims and that the defendants are entitled to judgment as a matter of law.

For the reasons set forth herein, we uphold the Superior Court's grant of summary judgment. The papers in the case may be remanded to the Superior Court.

Justice GOLDBERG did not participate.

---

11. Because we have determined that the Deed in Lieu of Foreclosure, combined with the accompanying affidavit, served to extinguish plaintiff's claims under the original contract, we need not address plaintiff's other arguments, except that we pause to observe that plaintiff's invocation of the concept of nominal damages has no applicability in a case such as this, where there has been a total extinguishment of claims pursuant to venerable and directly pertinent affirmative defenses. *See Murphy v. United Steelworkers of America Local No. 5705, AFL–CIO,* 507 A.2d 1342, 1346 (R.I.1986) (indicating that nominal damages are awarded when "it is clear that the plaintiff has sustained a loss but has failed to present evidence upon which a factfinder could ascertain the damages sustained by the plaintiff"). It is our view that plaintiff failed to point to any compensable injury to herself—one of the elements of a cause of action sounding in tort. *See generally Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 62–64 (2d Cir.1993); *see also Belliveau Building Corp. v. O'Coin,* 763 A.2d 622, 627 (R.I.2000).