Laurence F. RUTTER et al.

v.

MORTGAGE ELECTRONIC
REGISTRATION
SYSTEMS, et al.

No. 2012–181–APPEAL.

Supreme Court of Rhode Island.

Jan. 13, 2014.

Corey J. Allard, Esq.

William M. Dolan III, Esq.

## ORDER

The plaintiffs, Laurence F. Rutter and Alexandra C. Rutter, appeal from summary judgment entered against them and in favor of the Mortgage Electronic Registration Systems (MERS) and PennyMac Loan Services, LLC (PennyMac). This case came before the Supreme Court for oral argument on December 3, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time without further briefing or argument. For the reasons set forth in this order, we affirm the judgment of the Superior Court.

The plaintiffs, Laurence Rutter, along with his wife, Alexandra Rutter, purchased a home at 10 Courageous Circle in Bristol. The Rutters financed their purchase by obtaining a $1,301,250 mortgage loan with First National Bank of Arizona (FNBA) on July 18, 2007. FNBA was listed as the lender on the promissory note, which was signed by the Rutters as makers, and the note stated in relevant part that "Lender may transfer this [N]ote. Lender or anyone who takes this [N]ote by transfer and who is entitled to receive payments under this [N]ote is called the 'Note Holder.'" The promissory note was secured by a mortgage on the property; that document denominated the Rutters as the mortgagors and MERS as the mortgagee, acting as nominee for lender, FNBA, and lender's successors and assigns. The mortgage included the statutory power of sale. Finally, the mortgage provided that MERS had the right to foreclose on and sell the property should the Rutters fail to meet certain covenants as outlined in the mortgage agreement. As was typical during the late stages of 2008, both the note and mortgage on the property changed hands several times until PennyMac became the holder of the mortgage and the note on January 15, 2009, and August 18, 2009, respectively.

On November 1, 2008, the Rutters fell behind in their payment obligations under the note. On April 28, 2009, PennyMac notified the Rutters of its intent to foreclose, and PennyMac advertised a public-auction foreclosure sale of the property. However, PennyMac canceled the foreclosure proceedings when the Rutters made an agreement with PennyMac, under the terms of which the Rutters agreed to convey the property to PennyMac, which would in turn allow the Rutters to occupy the property for an additional sixty days.[1] On August 27, 2009, PennyMac sent the deed-in-lieu-of-foreclosure documents to the Rutters, but despite repeated attempts to finalize the deal, the Rutters never responded. On January 4, 2010, PennyMac

1. This type of arrangement is commonly referred to as a deed-in-lieu-of-foreclosure transaction. *See Zuba v. Pawtucket Credit Union,* 941 A.2d 167, 171 n. 7 (R.I.2008).

duly noticed the foreclosure sale of the property for February 24, 2010. At the foreclosure sale, which took place fourteen months after the original notice of foreclosure, PennyMac was the only bidder, and it purchased the property for $1,100,000. Also on February 24, the Rutters' counsel sent PennyMac's foreclosure counsel a notice of *lis pendens* that had been recorded against the property. On July 1, 2010, PennyMac recorded its foreclosure deed.

The Rutters filed suit against PennyMac and MERS on August 13, 2010, requesting the Superior Court to quiet title and declare that the Rutters were the owners of the property. They also sought unspecified damages for violation of the Real Estate Settlement Procedures Act (RESPA) in violation of 12 U.S.C. § 2601. Previously, PennyMac had filed suit in the District Court to evict the Rutters from the property after PennyMac had purchased the property at foreclosure and after it had demanded possession of the premises. Judgment in the District Court entered in favor of PennyMac by stipulation on July 23, 2010, but the Rutters filed notice of appeal to the Superior Court on July 26, 2010, for a trial *de novo*. The two cases were consolidated on March 22, 2011.

On September 15, 2011, MERS and PennyMac filed a motion for summary judgment asserting that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Specifically, PennyMac claimed that the Rutters had been adequately notified of their default, the assignment of the mortgage to PennyMac had been proper, the Rutters lacked standing to challenge the

assignment, and the foreclosure was, in all ways, valid. The trial justice, in a well-reasoned and thorough decision, granted the motion for summary judgment in favor of MERS and PennyMac. The trial justice found that the Rutters did not have standing to challenge the assignment of the mortgage but that, even if they did, the assignment was valid, and the foreclosure proper. The plaintiffs filed a timely appeal to this Court.

On appeal, plaintiffs present a number of arguments attempting to demonstrate why summary judgment was wrongfully granted; most notably for our purposes, plaintiffs argue that the assignment of the mortgage from MERS to PennyMac was invalid. By contrast, defendants contend that plaintiffs lacked standing to challenge the assignment of the mortgage from MERS to PennyMac. It is noteworthy that we have very recently addressed the issue of standing in *Mruk v. MERS*, 82 A.3d 527 (R.I.2013). We held in *Mruk* that "homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes as being void to the extent necessary to contest the foreclosing entity's authority to foreclose." Id. at 536.

Despite that, it is our opinion that the assignment of the mortgage to PennyMac was valid. The plaintiffs maintain that the assignment was void because there was insufficient evidence that the signatories to the mortgage assignment had the requisite authority to assign the note on behalf of the lender and that defendants were, therefore, in violation of G.L.1956 § 34–11–1 [2] We agree with the trial justice

---

**2.** General Laws 1956 § 34–11–1 states:

"Every conveyance of lands, tenements or hereditament absolutely, by way of mortgage, or on condition, use or trust, for any term longer than one year, and all declarations of trusts concerning the conveyance,

shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated; provided, however, that

that the mortgage signed by the Rutters "directly listed MERS and its assignees as having the statutory power of sale, therefore permitting MERS to assign the Mortgage and permitting the assignee to foreclose." Furthermore, the affidavit submitted by defendants that outlined the travel of both the mortgage and the note was not challenged by plaintiffs in the counter-affidavits that they submitted. When deciding a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure, "if the movant's affidavits about the specific material facts are in no way controverted and if they demonstrate the absence of a genuine issue about any material fact, summary judgment should be entered if the applicable law so dictates." Robert B. Kent at al., *Rhode Island Civil Procedure* § 56:4, VII–28 (West 2006). "When a motion for summary judgment has been filed and properly supported, a litigation death knell begins to toll. Unless the opposing parties * * * can still this doleful dirge by showing the existence of a genuine issue of material fact, all legal clamor will soon subside into a final judgment for the movant." *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 970 (R.I.1998). Having failed to challenge defendants' affidavit with specific facts, plaintiffs cannot now challenge those averments before this Court.

the conveyance, if delivered, as between the parties and their heirs, and as against those taking by gift or devise, or those having notice thereof, shall be valid and binding though not acknowledged or recorded. A lease for the term of one year or less shall be valid although made by parol. Leases for terms of more than one year may be recorded with a memorandum of lease in writing rather than the original lease; provided, however, that the memorandum shall contain the names of the parties to be charged, a description of the real estate, the duration of the lease, including renewal options and purchase options."

Finally, at oral argument, counsel acknowledged that every other argument pressed by the Rutters had been resolved by this Court's recent decision in *Bucci v. Lehman Brothers Bank, FSB.* 68 A.3d 1069 (R.I.2013).[3]

For the reasons set forth above, the judgment of the Superior Court is affirmed and the record may be remanded thereto.

3. We pause to note that following the pre-briefing conference on this case, the prebriefing justice directed the parties to file supplemental memoranda within twenty days of the release of this Court's opinion in *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069 (R.I.2013), to address what effect that opinion might have had·on the issues raised on appeal. In the supplemental memorandum filed by counsel for the Rutters, the *Bucci* case was mentioned only once in passing, and the supplemental memorandum failed to explain or acknowledge any effect that *Bucci* had on the arguments raised by the Rutters in this appeal.